WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Department of Justice
Office of the United States Trustee
Alexander Hamilton U.S. Custom House
One Bowling Green, Rm. 534
New York, NY 10004
Tel. (212) 510-0500
andrea.b.schwartz@usdoj.gov
By:     Andrea B. Schwartz, Esq.
        Trial Attorney

**Hearing Date and Time:**
October 21, 2025, at 10:00 a.m.
**Objection Deadline:**
October 17, 2025, by 12:00 noon
**Related to ECF No.:**
ECF No. 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

In re                                              :          Chapter 11
                                                   :
LUXURBAN HOTELS, INC., *et al.,*                   :          Case No. 25-12000 (DSJ)
                                                   :          (Jointly Administered)
                                   Debtors.        :
------------------------------------------------------------ X

## UNITED STATES TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. § 1104, FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

JURISDICTION, VENUE AND STATUTORY PREDICATE ......................................................2

FACTS .............................................................................................................................3

    The Chapter 11 Case .........................................................................................3

    Hotel Operations ..............................................................................................3

    Capital Structure ..............................................................................................4

    Post-Filing Activities ........................................................................................5

ARGUMENT ....................................................................................................................8

I.     The Statutory Framework ..................................................................................8

II.    Cause Exists for the Appointment of a Chapter 11 Trustee Because the Debtors and their Management or Ownership Have Incompetently and/or Grossly Mismanaged the Affairs of the Debtors ....................................................................9

III.   Because the Appointment of a Chapter 11 Trustee Would Be in the Interests of Creditors and other Interests of the Estate, Appointment of a Chapter 11 Trustee is Warranted Under Section 1104(a)(2) .....................................................................12

CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

*Cases*

*In re Adelphia Communication Corp.*,
    336 B.R. 610 (Bankr. S.D.N.Y. 2006).................................................................. 12

*In re Altman*,
    230 B.R. 6 (Bankr. D. Conn. 1999)..................................................................... 10

*Aareal Capital Corporation v. 960 Associates LLC, et al.*,
    N.Y. Supreme Ct., Index No. 805379/2025 ........................................................7

*In re Ashley River Consulting, LLC*,
    No. 14-13406 (MG), 2015 WL 1540941 (Bankr. S.D.N.Y. 2015)................................... 10

*In re China Fishery Grp. Ltd. (Cayman)*,
    No. 16-11895 (JLG), 2016 WL 6875903 (Bankr. S.D.N.Y. Oct. 28, 2016) .................... 12

*In re Euro-American Lodging Corp.*,
    365 B.R. 421 (Bankr. S.D.N.Y. 2007) ..............................................................12-13

*In re Eurospark Indus.*,
    424 B.R. 621 (Bankr. E.D.N.Y. 2010) ................................................................ 8

*In re Futterman,*
    584 B.R. 609 (Bankr. S.D.N.Y. 2018)..................................................................10

*In re Ionosphere Clubs, Inc.*,
    113 B.R. 164, (Bankr. S.D.N.Y. 1990) ................................................................9

*In re Marvel Entm't Group,*
    140 F.3d 463 (3d Cir. 1998) ............................................................................. 11

*In re Sharon Steel Corp.*,
    86 B.R. 455 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3d Cir. 1989)........................ 9

*In re Sillerman*,
    605 B.R. 631 (Bankr. S.D.N.Y. 2019)................................................................. 8

*In re Taub*,
    427 B.R. 208 (Bankr. E.D.N.Y. 2010) ................................................................12

*In re V. Savino Oil & Heating Co., Inc.*,
    99 B.R. 518 (Bankr. E.D.N.Y. 1989) ..............................................................9-10

i

*In re Wings Digital Corp.*,
   2005 WL 3789334 (Bankr. S.D.N.Y. May 16, 2005) ..................................................... 10

*Schuster v. Dragone*,
   266 B.R. 268 (D. Conn. 2001) ............................................................................................ 9

*In re The 1031 Tax Group, LLC*,
   374 B.R. 78 (Bankr. S.D.N.Y. 2007) ............................................................................... 10

*William H. Vaughan & Co., Inc.*,
   40 B.R. 524, 526 (Bankr. E.D. Pa. 1984) ........................................................................ 13

**Statutes**

   11 U.S.C. § 704(a)(2) .................................................................................................. 11, n.5

   11 U.S.C. § 1104 ................................................................................................................. 8

   11 U.S.C. § 1104(a)(1) ............................................................................................... 9-10, 12

   11 U.S.C. § 1104(a)(2) ...................................................................................................... 9, 12

   11 U.S.C. § 1106(a)(1) .................................................................................................. 11, n.5

   11 U.S.C. § 1107 ................................................................................................................. 8

   11 U.S.C. § 1108 ................................................................................................................. 8

   28 U.S.C. § 157 ................................................................................................................... 2

   28 U.S.C. § 157(b) .............................................................................................................. 2

   28 U.S.C. § 1334 ................................................................................................................. 2

   28 U.S.C. § 1408 ................................................................................................................. 2

   28 U.S.C. § 1409 ................................................................................................................. 2

**Rules**

   Fed. R. Bankr. P. 2007.1 ................................................................................................... 2

***Other Authorities and Websites***

Luxurban.com.................................................................................................................. Note 1

Gabe Castro-Root, *A Surprise Awaited These Travelers at Check-In: The Hotel Was Closed*,
    N.Y. TIMES (Sept. 17, 2025) ........................................................................5-6

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2, files this motion (the "Motion") for an order pursuant to 11 U.S.C. § 1104, directing the appointment of a Chapter 11 trustee. In support thereof, the U.S. Trustee represents and alleges as follows:

### Preliminary Statement

On Sunday evening, September 14, 2025, LuxUrban hotels (defined herein) commenced a "free fall" bankruptcy case that has not stopped falling. With no sign of pre-filing negotiations for a plan of reorganization and no "first day motions," the case landed in this Court resulting in a state of chaos for the public and LuxUrban's creditors. It was plain from day one that an independent fiduciary, here, a chapter 11 trustee, was warranted immediately due to LuxUrban's misconduct, including an apparent disregard for its customers – the traveling public, and to protect the best interests of its creditors.

According to its website – which is still available for viewing, LuxUrban hotels provides travelers "unparalleled comfort" in the four hotels it operates in New York City: Tuscany, Hotel 27, The Herald and Hotel 46.[1] Remarkably, it appears that even before the bankruptcy petitions were filed, the hotels were no longer staffed, cleaned or maintained, and services and rooms were no longer available, but rooms continued to be rented on various websites. In fact, according to news reports, although ostensibly the hotels were closed, some of the rooms were still occupied by travelers and new customers who had paid for the rooms were arriving only to be turned away. It appears that no one – including the company that provided property management services to LuxUrban – was informed the hotels were closed.

---

[1] *See luxurban.com.* (N.B.* Hotel 46 is rented to a single-occupancy resident unlike the other three hotels whereby LuxUrban rents rooms to public travelers.)

The Bankruptcy Code permits the appointment of a chapter 11 trustee based not only on a debtor's post-petition conduct but also where gross mismanagement occurs pre-petition. Here, LuxUrban's pre-bankruptcy conduct is equally troubling, evidenced by New York State's claim that LuxUrban owes nearly $120 million in unpaid sales tax due over the past five years.

It is hard to imagine a situation where cause is so clearly demonstrated as to why a chapter 11 trustee is necessary. The LuxUrban debtors operate in several buildings – one of which is 18 stories tall – and they rent rooms to the public. Although it is understandable that a debtor may have financial difficulties for which bankruptcy protection is sought, a hotel operator – such as here – that leaves customers stranded, places people in rooms where no services are available, and where union workers appear to have been unpaid, is untenable, and dangerous. The U.S. Trustee, therefore, seeks an order from this Court directing that he appoint a chapter 11 trustee on an expedited basis.

### Jurisdiction, Venue and Statutory Predicate

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is initiated pursuant to 11 U.S.C. § 1104, and Fed. R. Bankr. P. 2007.1.

## Facts

### *The Chapter 11 Case*

2.      On September 14, 2025 (the "Petition Date"), LuxUrban Hotels, Inc.

("LuxHotels") and LuxUrban RE Holdings, LLC ("LuxUrban RE" and, together with LuxHotels,

"LuxUrban" or "Debtors"), filed voluntary petitions for relief (the "Petitions") under chapter 11

of the Bankruptcy Code, [ECF No. 1], Case Nos. 25-12000 (DSJ) and 25-12001 (DSJ),

respectively. Michael James ("Mr. James"), Chief Financial Officer of the Debtors, signed the

Petitions under penalty of perjury. *See* Petitions at No. 17.

3.      By Order dated September 16, 2025, the Court directed that the cases be jointly

administered for procedural purposes under Case No. 25-12000 (DSJ), [ECF No. 4].

### *Hotel Operations*

4.      The Debtors lease entire existing hotels on a long-term basis and rent out hotel

rooms in the properties they lease. *See* Consolidated Declaration of Michael James Pursuant to

Local Bankruptcy Rule 1007-2 of the Local Bankruptcy Rules for the United States Bankruptcy

Court for the Southern District of New York, [hereinafter, "James Declaration"] [ECF No. 1] at ¶

7.

5.      Their portfolio consists of four hotels in Manhattan through long-term lease

agreements that they manage directly. *Id.* The hotels are:

(i)     Herald, located at 71 West 35th Street ("Herald"), with 168 rooms.
        LuxUrban is the leaseholder; approximately 12 years left on the lease.

(ii)    Tuscany, located at 120 East 39th Street, ("Tuscany"), with 125 rooms.
        LuxUrban is the leaseholder; approximately 12.5 years left on its lease.

(iii)   Hotel 27, located at 21 East 27th Street ("Hotel 27"), with 74 rooms.
        LuxUrban RE is the leaseholder; approximately 13 years left on its lease.

3

      (iv)      Hotel 46, located at 129 West 46th Street ("Hotel 46") with 79 rooms,
               N.B. Property not operated as a hotel but as SRO (one single occupant).
               LuxUrban RE is the leaseholder; approximately 23 years left on its lease.

*Id.*

6.       The Debtors' revenues are generated primarily through the rental of hotel rooms and other services, including fees for cancellable room rates, resorts, late-and early check-ins and check-outs, baggage, parking, grab and go food services and upgrades. *Id.* at ¶ 8.

7.       The Debtors estimate they have between 200 and 999 creditors, assets of $1 to $10 million, and liabilities of between $10 to $50 million. *See* Petition at Nos. 14-16. The Debtors acknowledge that after payment of administrative expense claims, there will be no funds for distributions to the Debtors' unsecured creditors. *Id.,* at No. 13.

***Capital Structure***

8.       On August 13, 2023, LuxUrban commenced a private offering pursuant to which it sold senior secured convertible promissory notes (the "Notes") in an aggregate principal amount of up to $15,000,000, together with common stock purchase warrants ("Note Warrants"). *See* James Decl. at ¶ 11. The Notes bear interest at 18%, are secured by substantially all the assets of the LuxUrban. *Id.* The holders of the Notes including Greenle Partners LLC ("Greenle") and Series Alpha P.S., as Collateral Agent for the Lenders ("Series Alpha") (the "Noteholders" or "Lenders"). *Id.*

9.       The Noteholders converted the Notes into secured debt (the "Senior Debt"). *Id.* The Debtors assert that the outstanding balance on the Senior Debt as of the Petition Date was approximately $14.9 million. *Id.* The maturity dates on the Notes passed pre-petition. *Id.*

10.      LuxUrban RE also entered into agreements for merchant cash advances with many lenders (the "MCA Lenders"). *Id.* The Debtors claim that the amount due to the MCA Lenders as of the Petition Date was no more than $5.2 million. *Id.* at ¶ 12.

4

11.    The Debtors assert there is at least approximately $7.8 million owed to vendors.

*Id.,* at ¶ 14.

12.    In addition to the debt described *supra,* there are no fewer than 85 pending lawsuits against the Debtors or their predecessors, which span 7 states and 5 federal court districts. *Id.,* at Attachment.

13.    According to Mr. James, the management decided to commence the bankruptcies because the Debtors' current cash balance and projected cash flows from operations would not provide sufficient capital to continue as a going concern absent relief from the Bankruptcy Code, including rejection of unfavorable leases. *Id.* at ¶ 13.

***Post-Petition Activities***

14.    On September 19, 2025, the Hotel & Gaming Trades Council, AFL-CIO (the "Union") filed a letter (the "Union Letter") advising the Court of several circumstances affecting its members, including:

    i.    The Debtors have not paid their Union-represented employees for a considerable period, specifically noting that they have not paid the employees at Tuscany and Hotel 46 for *five* weeks;

    ii.    The Debtors have failed to remit contributions (required by the CBA) to the HTC-HANYC Employee Benefits Funds for several months; and

    iii.    The Debtors have been unlawfully holding approximately $57,000 in employee 401K contributions.

[ECF No. 10], Union Letter at 1-2.

15.    The Union Letter also states that the Debtor's actions are negatively impacting on their members who must pay rent, pay for food and other necessities, but the Debtor's closing of hotels without notice has caused problems for travelers who have arrived at closed hotels after paying for reservations. *Id.* (citing Gabe Castro-Root, *A Surprise Awaited These Travelers at*

*Check-In: The Hotel Was Closed*, N.Y. TIMES (Sept. 17, 2025)).[2] A copy of this New York

Times article is annexed as **Exhibit A** to the Declaration of Andrea B. Schwartz, dated October

9, 2025 [hereinafter, "Schwartz Declaration"] at ¶ 3. Also noting the absence of first day

motions, including a wage motion, the Union requested a conference with the Court. Union

Letter at 2.

16.     On September 19, 2025, the U.S. Trustee requested a conference due to the lack

of first day motions and concerns about wages and consumer protection issues, [ECF No. 11].

17.     On September 22, 2025, Digital Arbitrage, Inc. d/b/a Cloudbeds ("Cloudbeds")

filed a letter (the "Cloudbeds Letter") requesting a conference with the Court, [ECF No. 16].

Cloudbeds, which provides property management services to the Debtors, explained that as the

result of the bankruptcy and the Debtors' failure to advise Cloudbeds of the hotel closures,

Cloudbeds was still obligated to provide hotel booking engine services to the Debtors, thereby

permitting travelers to book hotel rooms at closed hotels. *See generally,* Cloudbeds Letter.

18.     On September 23, 2025, the Court scheduled a conference for September 30,

2025, at 10:00 a.m., [ECF No. 20].

19.     On September 24, 2025, Aareal Capital Corporation ("Aareal"), the secured

lender to 960 Assoc. LLC (the "Landlord")[3] filed a letter (the "Aareal Letter") requesting entry

of an order approving a stipulation between Aareal and the Debtors (the "Receiver Stipulation")

---

[2] The NYT article describes situations that travelers experienced when they arrived at the Debtors' hotels and found them closed, after having paid for reservations. Schwartz Decl. at ¶ 3. One traveler told the reporter that the note on the door was signed by "Building Management" and the cause of the closure was "unresolved safety and compliance issues left by the previous hotel management company, who abandoned the property without notice," and referred to an order from the Fire Department to vacate immediately. *Id.* Apparently, no notice of the closure and the bankruptcy filing was included in the notice. *Id.*

[3] Upon information and belief, 960 Associates, LLC owns the property at which the Herald is located (71 W. 35th Street) and is the landlord under the lease pursuant to which the Debtors rent the space at which the Herald operates. Schwartz Decl. at ¶ 4.

that, in essence, would grant Aareal relief from the automatic stay to submit an order for a

receiver (the "Receiver Order") in a foreclosure action pending in the New York Supreme Court

styled, *Aareal Capital Corporation v. 960 Associates LLC, et al.*, Index No. 805379/2025 (the

"960 Associates Foreclosure Action"). Aareal Letter at 1. According to Aareal, the judge in the

960 Associates Foreclosure Action had already granted the motion for a receiver, however, the

bankruptcy filing and the attendant stay prevented Aareal from submitting its order without first

obtaining stay relief from this Court.[4] *Id.*

20.      The U.S. Trustee filed a letter opposing approval of the Receiver Stipulation and

the Receiver Order without the Court first holding a hearing to consider same, [ECF No. 26].

The U.S. Trustee advised the Court in its letter that given the apparent deterioration at the hotels,

the lack of first day motions and the various concerns that the creditors were raising by letter or

phone calls to the U.S. Trustee, it appeared that the best interests of creditors required that the

Court appoint an independent fiduciary, here a chapter 11 trustee, to protect the Debtor's assets

and the rights of creditors. *Id.* at 1.

21.      On September 30, 2025, the Court held a conference and heard from all the

parties. Among other things, the Court set an expedited schedule for the U.S. Trustee's motion

for the appointment of a Chapter 11 Trustee, with moving papers due October 9, 2025, responses

due by noon on October 17, 2025, and a hearing to be held on October 21, 2025, at 10:00 a.m.

Schwartz Decl. at ¶ 6.

22.      During a colloquy with the Court concerning the Receiver Stipulation and the

Receiver Order, counsel for Aareal and the Debtors represented that nothing in those two

documents would affect the Debtors, their rights under the lease or their estates, and that all

---

[4] Upon information and belief, Aareal is required to seek stay relief here is because the Debtors are named defendants in the 960 Associates Foreclosure Action. Schwartz Decl. at ¶ 5.

actions by any receiver would be subject to the Bankruptcy Code, Rules and applicable law. *Id.* ¶ 7. The Court directed the U.S. Trustee to negotiate with the Debtors and Aareal on language that would be satisfactory to all parties. *Id.*

23.     On September 18, 2025, the New York State Department of Taxation and Finance ("NYSDTF") filed a proof of claim in the aggregate sum of $118,568,565.23 consisting of a secured claim of $1,476,439.32 and priority claim of $91,200,127.42. The claim was subsequently amended on October 8, 2025. The basis for the claim is sales tax due and owing for various periods from February 29, 2020, through February 28, 2025, *See* Claims Register, Claim No. 3.

24.     On September 23, 2025, the New York State Department of Labor filed a priority claim for the sum of $39,607.88. *See* Claims Register, Claim No. 7.

## Argument

The facts of this case warrant the appointment of a chapter 11 trustee under subsections (a)(1) or (a)(2) of section 1104 of the Bankruptcy Code.

## I.     The Statutory Framework.

The Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations. *See* 11 U.S.C. §§ 1007, 1008; *see also In re Eurospark Indus.*, 424 B.R. 621, 627 (Bankr. E.D. N.Y. 2010). Yet, while there is a "presumption that a debtor should be permitted to remain in possession of its business, that presumption is not absolute." *In re Sillerman*, 605 B.R. 631, 640 (Bankr. S.D.N.Y. 2019).

A debtor-in-possession owes fiduciary duties to the bankruptcy estate and must, among other things, "protect and . . . conserve property in [its] possession for the benefit of creditors" and "refrain [] from acting in a manner which could damage the estate or hinder a successful

8

reorganization of the business." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr.

S.D.N.Y. 1990) (quoting *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988),

*aff'd*, 871 F.2d 1217 (3d Cir. 1989)). "The willingness of Congress to leave a debtor-in-

possession is premised on an expectation that current management can be depended upon to

carry out the fiduciary responsibilities of a trustee." *In re V. Savino Oil & Heating Co., Inc.*, 99

B.R. 518, 526 (Bankr. E.D.N.Y. 1989). If a debtor-in-possession is unable to fulfill its mandate,

the debtor may be dispossessed of its officers and alternative management may be appointed in

the form of a Chapter 11 trustee. *See Schuster v. Dragone*, 266 B.R. 268, 271 (D. Conn. 2001).

The Bankruptcy Code sets forth two separate standards for evaluating the necessity of a

trustee: Section 1104(a)(1) and (a)(2). These sections provide, in pertinent part:

> (a) At any time after the commencement of the case but before confirmation of a
> plan, on request of a party in interest or the United States trustee, and after notice
> and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross
> mismanagement of the affairs of the debtor by current management, either before
> or after the commencement of the case, or similar cause, but not including the
> number of holders of securities of the debtor or the amount of assets or liabilities
> of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security
> holders, and other interests of the estate, without regard to the number of holders
> of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(1), (a)(2).

## II.      Cause Exists for the Appointment of a Chapter 11 Trustee Because the Debtors and their Management or Ownership Have Incompetently and/or Grossly Mismanaged the Affairs of the Debtors.

As stated above, Section 1104(a)(1) directs the court to order the appointment of a trustee

for cause. 11 U.S.C. § 1104(a)(1). "Cause" includes "fraud, dishonesty, incompetence, or gross

mismanagement of the affairs of the debtor by current management . . ." *Id.* This list is not

exhaustive. *In re Futterman,* 584 B.R. 609, 616 (Bankr. S.D.N.Y. 2018); *see also In re Ashley River Consulting, LLC,* No. 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. 2015). "[S]ome other '[f]actors relevant to the appointment of a trustee under § 1104(a)(1) include [...] misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence.'" *Id.* (citing *In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999)).

Bankruptcy courts have broad discretion to determine whether the challenged conduct rises to the level of establishing cause such that appointment of a trustee is appropriate. *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007); *In re Wings Digital Corp.*, 2005 WL 3789334, at *4 (Bankr. S.D.N.Y. May 16, 2005). However, "once the court makes a finding that cause exists under § 1104(a)(1), 'there is no discretion; an independent trustee must be appointed.'" *In re The 1031 Tax Group, LLC*, 374 B.R. at 86 (quoting *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989)).

Importantly, "it is not necessary to delineate whether the cause consists of fraud, dishonesty, incompetence, gross mismanagement 'or similar cause.'" *Savino Oil,* 99 B.R. at 527. Indeed, any form of cause under "the penumbra of fiduciary neglect . . . mandates the appointment of a trustee." *Id.* As addressed above, the Debtors' negligent actions here have negatively and profoundly impacted on the lives of their employees and customers. Without notice to its customers, the Debtors – which rent hotel rooms and other services to members of the public – simply closed their doors without warning and without notice. Travelers who had paid for reservations and had an expectation of arriving at a hotel with paid accommodations for at least one night arrived in New York City only to find that they had no room, no parking for their cars, and no other services. Perhaps even worse, the Debtors failed to advise Cloudbeds, the

Debtors' property manager and booking agent, that the Debtors were closing operations. As a result, the hotel booking engine through which the Debtors' customers would book rooms was still up and running. Accordingly, rooms continued to be booked and paid for even though there were no rooms open to rent.

Inconceivably, and perhaps even more troubling, is that according to the Union, the Debtors had not paid its union employees for an extended period. *See generally,* Union Letter. In fact, the Union noted that the employees at the Tuscany Hotel and Hotel 45 had not been paid for five weeks. Union Letter at 1. Further, the Debtors are alleged to have failed to remit their Union Collective Bargaining Contributions. *Id.* And, although not known at this time, in view of the Union's allegation that union employees have not been paid, certainly, an investigation into whether the Debtors are current with respect to FICA, FUTA and withholding taxes must be conducted. Finally, and of great concern, is the NYSDTF's proof of claim that asserts secured and priority taxes of over $11 million for unpaid sales taxes. *See* Claims Register, Claim No. 3.

This information gives cause for concern regarding the ability of the Debtors to conduct the necessary investigations and pursue appropriate remedies in the best interest of their estates and creditors.[5] And, at the very least, demonstrates that the Debtors have failed to manage their affairs – both before and after filing for chapter 11 relief. Turning control of the Debtors and their assets over to a chapter 11 trustee would reassure creditors and other parties-in-interest that the estate's fiduciary is looking out for *them*. It is evident that an independent fiduciary in whom the Court and the parties can have confidence must be appointed, especially considering the disastrous actions taken by the Debtors in connection with their disorderly attempt to wind down its business. *See, e.g., In re Marvel Entm't Group*, 140 F.3d 463, 472-74 (3d Cir. 1998) (finding

---

[5] Section 1106(a)(1), which incorporates section 704, requires that a debtor-in-possession be accountable for all property received. 11 U.S.C. § 1106(a)(1), incorporating 11 U.S.C. § 704(a)(2).

sufficient cause under 11 U.S.C. § 1104(a)(1) where irreconcilable conflicts between the debtor and creditors existed).

Accordingly, "cause" exists under 11 U.S.C. § 1104(a)(1) for the appointment of a Chapter 11 Trustee as an independent fiduciary.

**III.    Because the Appointment of a Chapter 11 Trustee Would Be in the Interests of Creditors and other Interests of the Estate, Appointment of a Chapter 11 Trustee is Warranted Under Section 1104(a)(2).**

Similarly, even if the Court finds that cause for the appointment of a trustee under subsection (a)(1) of section 1104, is not warranted, a chapter 11 trustee would be in the best interests of creditors. The U.S. Trustee hereby incorporates by reference his arguments from Section II, *supra*, that demonstrate a lack of trustworthiness in these Debtors and their management, as well as a lack of confidence that would undoubtedly occur as residents or other travelers become aware of the Debtors' business practices. Further, as discussed above, customers have been harmed by the ill-conceived and abrupt cessation of the Debtors' services without notice – seemingly even to those employed by the Debtors. Accordingly, the appointment is warranted under Section 1104(a)(2) of the Bankruptcy Code. *See* 11 U.S.C. § 1104(a)(2).

Under Section 1104(a)(2), courts "eschew rigid absolutes and look to the practical realities and necessities." *See In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (quoting *In re Adelphia Communication Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007).  In short, the standard for appointment of a Chapter 11 trustee under Section 1104(a)(2) is flexible. *In re China Fishery Group Limited (Cayman)*, No. 16-11895, 2016 WL 6875903, at *14 (Bankr. S.D.N.Y. Oct. 28,

2016) (articulating factors considered by courts in assessing motions brought under section

1102(a)(2)); *Euro-American Lodging*, 365 B.R. at 427.

Finally, yet one more factor in favor of the appointment of a chapter 11 trustee is that it is

unlikely that these Debtors would be willing – or even able – to pursue causes of action on

behalf of their estates. *See William H. Vaughan & Co., Inc.*, 40 B.R. 524, 526 (Bankr. E.D. Pa.

1984) (finding that unwillingness or inability of management to pursue estate causes of action

among grounds for appointment of Chapter 11 trustee). And as the facts here make clear, it is

apparent that some party will need to at the very least consider whether the Debtors' actions here

have harmed the estates and whether it is possible to take steps in furtherance of a recovery to

the benefit to the estates.

Accordingly, it is in the interest of the estates and their creditors at this juncture to put

these cases into the hands of an independent fiduciary who can, among other things, (1) assume

control of the Debtors' assets, (2) investigate the extent of any wage and tax claims due to the

alleged failure to pay certain employees, (3) determine the harm and impact from the abrupt

closing without notice of the Debtors' business, and (4) determine other issues of importance

including whether a feasible plan can be proposed and how to proceed on a going forward basis.

The appointment of a chapter 11 trustee would remove any doubt over the authority of the

person administering the estate and further the interests of creditors. A cost-benefit analysis

weighs heavily in favor of a chapter 11 trustee, and it is in the best interest of the estate's

creditors for the Court to appoint a chapter 11 trustee to manage these Debtors and direct its

reorganization.

13

## **Conclusion**

WHEREFORE, the U.S. Trustee respectfully requests that the Court direct him to appoint

a Chapter 11 trustee and grant such other and further relief as may be deemed just and proper.

Dated: New York, NY
        October 9, 2025

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:     /s/ *Andrea B. Schwartz*
        Andrea B. Schwartz
        Trial Attorney