# EXHIBIT A

**Connell Foley LLP**
Bryan P. Couch, Esq.
Attorney ID # 02624-2000
One Newark Center
1085 Raymond Boulevard, Nineteenth Floor
Newark, New Jersey 07102
(973) 436-5800
Attorneys for Plaintiffs, Wyndham Hotel Group, LLC, TMH Worldwide, LLC,
Travelodge Hotels, Inc., and Baymont Franchise Systems, Inc.

|  |  |
|---|---|
| WYNDHAM HOTEL GROUP, LLC, a Delaware Limited Liability Company; TMH WORLDWIDE, LLC, a Delaware Limited Liability Company; TRAVELODGE HOTELS, INC., a Delaware Corporation; and, BAYMONT FRANCHISE SYSTEMS, INC., a Delaware Corporation, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY<br><br>DOCKET NO. MRS-L-000977-24<br><br>Civil Action<br><br>**AMENDED COMPLAINT** |
| Plaintiffs, | |
| v. | |
| LUXURBAN HOTELS INC., a Delaware Corporation; LUXURBAN RE HOLDINGS LLC, a Delaware Limited Liability Company; CORPHOUSING RSL LLC, a Delaware Limited Liability Company; and BRIAN FERDINAND, an individual, | |
| Defendants. | |

Plaintiffs Wyndham Hotel Group, LLC, TMH Worldwide, LLC, Travelodge Hotels, Inc., and Baymont Franchise Systems, Inc., (collectively referred to herein as "Plaintiffs") by their attorneys, Connell Foley LLP, complaining of defendants, LuxUrban Hotels Inc., LuxUrban RE Holdings LLC, Corphousing RSL LLC, and Brian Ferdinand (collectively referred to herein as "Defendants"), say:

<div align="center">INTRODUCTION</div>

This matter arises from the termination of twenty-one different Membership or Franchise Agreements between Plaintiffs and Defendants precipitated by Defendants' disregard and multiple

material breaches of their contractual obligations, including but not limited to, Defendants' failure to comply with monetary obligations under the various agreements, failure to maintain the good will associated with Plaintiffs' brands, failure to comply with the publicity provisions under the various agreements, and failure to pay debts to third parties.

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Wyndham Hotel Group, LLC ("WHG") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2.      Plaintiff TMH Worldwide, LLC ("TMH") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

3.      Plaintiff Travelodge Hotels, Inc. ("THI") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

4.      Plaintiff Baymont Franchise Systems, Inc. ("BFS") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

5.      Defendant LuxUrban Hotels Inc. ("LuxUrban"), on information and belief, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2125 Biscayne Boulevard, #253, Miami, Florida 33137.

6.      Defendant LuxUrban RE Holdings LLC ("LuxUrban RE"), on information and belief, is a limited liability company organized and existing under the laws of the State of

2

Delaware, with its principal place of business at 2125 Biscayne Boulevard, #253, Miami, Florida 33137.

7.     Defendant Corphousing RSL LLC ("Corphousing"), on information and belief, is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 2125 Biscayne Boulevard, #253, Miami, Florida 33137.

8.     Defendant Brian Ferdinand ("Ferdinand"), on information and belief, is a principal of LuxUrban and a citizen of the State of New York, having an address at 6 Dogwood Hill, Glen Head, New York 11545.

9.     This Court has personal jurisdiction over LuxUrban, LuxUrban RE, and Corphousing RE by virtue of, among other things, section 17.6.3 of the following agreements:

  a.   the August 2, 2023 Townhouse Hotel Membership Agreement by and between LuxUrban and TMH (the "Townhouse Hotel Agreement"),

  b.   the August 2, 2023 O Hotel Membership Agreement by and between LuxUrban RE and TMH (the "O Hotel Agreement"),

  c.   the August 2, 2023 Blakely Membership Agreement by and between LuxUrban and TMH (the "Blakely Agreement"),

  d.   the August 2, 2023 Condor Hotel Membership Agreement by and between LuxUrban RE and TMH (the "Condor Hotel Agreement"),

  e.   the August 2, 2023 Washington Membership Agreement by and between LuxUrban and TMH (the "Washington Agreement"),

  f.   the August 2, 2023 Herald Membership Agreement by and between LuxUrban and TMH (the "Herald Agreement"),

3

g.  the August 2, 2023 Georgetown Residences Membership Agreement by and between Corphousing and TMH (the "Georgetown Residences Agreement"),

h.  the August 2, 2023 Lafayette Hotel Membership Agreement by and between LuxUrban and TMH (the "Lafayette Hotel Agreement"),

i.  the August 2, 2023 Variety Hotel Membership Agreement by and between LuxUrban and TMH (the "Variety Hotel Agreement"),

j.  the August 2, 2023 Tuscany Hotel Membership Agreement by and between LuxUrban RE and TMH (the "Tuscany Hotel Agreement"),

k.  the August 2, 2023 Hotel 57 Membership Agreement by and between LuxUrban RE and TMH (the "Hotel 57 Agreement"),

l.  the February 7, 2024 James Hotel Membership Agreement by and between LuxUrban RE and TMH (the "James Hotel Agreement"),

m.  the December 27, 2023 Royalton Hotel Membership Agreement by and between LuxUrban RE and TMH (the "Royalton Hotel Agreement"),

n.  the August 2, 2023 Astor Hotel Membership Agreement by and between LuxUrban and TMH (the "Astor Hotel Agreement"),

o.  the August 2, 2023 Hotel Impala Membership Agreement by and between LuxUrban and TMH (the "Hotel Impala Agreement"),

p.  the August 2, 2023 La Flora Hotel Membership Agreement by and between LuxUrban and TMH (the "La Flora Hotel Agreement"),

q.  the August 2, 2023 Bogart Hotel Membership Agreement by and between LuxUrban RE and TMH (the "Bogart Hotel Agreement"),

    r.    the August 2, 2023 12th & Ocean Hotel Membership Agreement by and between LuxUrban and TMH (the "12th & Ocean Hotel Agreement")[1],

    s.    the December 6, 2023 Franchise Agreement by and between LuxUrban RE and BFS (the "Baymont Franchise Agreement"),

    t.    the August 2, 2023 BeHome Franchise Agreement by and between Corphousing and THI (the "BeHome Agreement"), and

    u.    the December 8, 2023 Hotel 46 Agreement by and between LuxUrban RE and THI (the "Hotel 46 Agreement")[2] [3].

10.    Specifically, pursuant to section 17.6.3 of each of the Hotel Agreements, which are described in more detail below, LuxUrban, LuxUrban RE, and Corphousing have consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey. . . ."

11.    This Court has personal jurisdiction over Ferdinand by virtue of, among other things, the terms of the personal guaranties, described in more detail below, pursuant to which Ferdinand acknowledged that he was personally bound by section 17 of each of the Trademark Membership Agreements, the Travelodge Franchise Agreements, and the Baymont Franchise Agreement.

---

[1] The Townhouse Hotel Agreement, O Hotel Agreement, Blakely Agreement, Condor Hotel Agreement, Washington Agreement, Herald Agreement, Georgetown Residences Agreement, Lafayette Agreement, Variety Hotel Agreement, Tuscany Hotel Agreement, Hotel 57 Agreement, James Hotel Agreement, Royalton Hotel Agreement, Astor Hotel Agreement, Hotel Impala Agreement, La Flora Hotel Agreement, Bogart Hotel Agreement, and the 12th & Ocean Hotel Agreement are referred to collectively herein as the "Trademark Membership Agreements".
[2] The BeHome Agreement and the Hotel 46 Agreement are referred to collectively herein as the "Travelodge Franchise Agreements".
[3] The Trademark Membership Agreements, Baymont Franchise Agreement, and Travelodge Franchise Agreements are referred to collectively herein as the "Hotel Agreements".

12.     Venue is proper pursuant to section 17.6.3 of the Trademark Membership Agreements, the Travelodge Franchise Agreements, and the Baymont Franchise Agreement, inasmuch as that provision contains an express waiver by LuxUrban, LuxUrban RE, and Corphousing of any objection to venue in this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

    *a.  The Trademark Collection® by Wyndham Hotels*

        *i.  The Trademark Membership Agreements*

13.     On or about August 2, 2023, TMH entered into the Townhouse Hotel Agreement with LuxUrban for the operation of a 70-room Trademark Collection® by Wyndham guest lodging facility located at 150 20th Street, Miami Beach, Florida 33139, designated as Site No. 56360-24053-02 (the "Townhouse Hotel").  A true copy of the Townhouse Hotel Agreement is attached hereto as Exhibit 1.

14.     On or about August 2, 2023, TMH entered into the O Hotel Agreement with LuxUrban RE for the operation of a 68-room[4] Trademark Collection® by Wyndham guest lodging facility located at 819 Flower Street, Los Angeles, California 90017, designated as Site No. 58331-24059-01 (the "O Hotel").  A true copy of the O Hotel Agreement is attached hereto as Exhibit 2.

15.     On or about August 2, 2023, TMH entered into the Blakely Agreement with LuxUrban for the operation of a 117-room Trademark Collection® by Wyndham guest lodging facility located at 136 West 55th Street, New York, New York 10019, designated as Site No. 58347-

---

[4] By Amendment to the O Hotel Agreement dated September 12, 2023 (the "September 12, 2023 O Hotel Amendment"), a true copy of which is attached as Exhibit 3, the parties amended Schedule B of the O Hotel Agreement to reflect the room count at the O Hotel had decreased from 68 to 67 rooms.

6

24053-01 (the "Blakely Hotel").  A true copy of the Blakely Agreement is attached hereto as

Exhibit 4.

16.     On or about August 2, 2023, TMH entered into the Condor Hotel Agreement with

LuxUrban RE for the operation of a 35-room Trademark Collection® by Wyndham guest lodging

facility located at 56 Franklin Avenue, Brooklyn, New York 11205, designated as Site No. 58346-

24059-01 (the "Condor Hotel").  A true copy of the Condor Hotel Agreement is attached hereto as

Exhibit 5.

17.     On or about August 2, 2023, TMH entered into the Washington Agreement with

LuxUrban for the operation of a 217-room Trademark Collection® by Wyndham guest lodging

facility located at 8 Albany Street, New York, New York 10006, designated as Site No. 58349-

24053-01 (the "Washington Hotel").  A true copy of the Washington Agreement is attached hereto

as Exhibit 6.

18.     On or about August 2, 2023, TMH entered into the Herald Agreement with

LuxUrban for the operation of a 167-room[5] Trademark Collection® by Wyndham guest lodging

facility located at 960 Avenue of the Americas, New York, New York 10001[6], designated as Site

No. 58348-24053-01 (the "Herald Hotel").  A true copy of the Herald Agreement is attached hereto

as Exhibit 7.

19.     On or about August 2, 2023, TMH entered into the Georgetown Residences

Agreement with Corphousing for the operation of an 80-room Trademark Collection® by

Wyndham guest lodging facility located at 1000 29th Street NW, Washington, DC 20007,

---

[5] By Amendment to the Herald Agreement dated September 12, 2023 (the "September 12, 2023 Herald Amendment"),
a true copy of which is attached as Exhibit 8, the parties amended Schedule B of the Herald Agreement to reflect that
the room count at the Herald Hotel had decreased from 167 to 166 rooms.
[6] By Amendment to the Herald Agreement dated September 12, 2023 (the "September 12, 2023 Herald Letter
Amendment"), a true copy of which is attached as Exhibit 9, the parties amended the Location in Appendix A of the
Herald Agreement to reflect that the Herald Hotel was located at 71 West 35th Street, New York, New York 10001.

7

designated as Site No. 58321-24049-01 (the "Georgetown Residences Hotel"). A true copy of the Georgetown Residences Agreement is attached hereto as Exhibit 10.

20. On or about August 2, 2023, TMH entered into the Lafayette Hotel Agreement with LuxUrban for the operation of a 60-room Trademark Collection® by Wyndham guest lodging facility located at 600 Saint Andrews Avenue, New Orleans, Louisiana 70130, designated as Site No. 58330-24053-02 (the "Lafayette Hotel"). A true copy of the Lafayette Hotel Agreement is attached hereto as Exhibit 11.

21. On or about August 2, 2023, TMH entered into the Variety Hotel Agreement with LuxUrban for the operation of a 70-room Trademark Collection® by Wyndham guest lodging facility located at 1700 Alton Road, Miami Beach, Florida 33139, designated as Site No. 58322-24053-02 (the "Variety Hotel"). A true copy of the Variety Hotel Agreement is attached hereto as Exhibit 12.

22. On or about August 2, 2023, TMH entered into the Tuscany Hotel Agreement with LuxUrban RE for the operation of a 125-room[7] Trademark Collection® by Wyndham guest lodging facility located at 120 East 39th Street, New York, New York 10016, designated as Site No. 58350-24059-01 (the "Tuscany Hotel"). A true copy of the Tuscany Hotel Agreement is attached hereto as Exhibit 13.

23. On or about August 2, 2023, TMH entered into the Hotel 57 Agreement with LuxUrban RE for the operation of a 216-room[8] Trademark Collection® by Wyndham guest lodging facility located at 130 East 57th Street, New York, New York 10022, designated as Site

---

[7] By Amendment to the Tuscany Hotel Agreement dated September 29, 2023 (the "Amendment to the Tuscany Hotel Agreement"), a true copy of which is attached as Exhibit 14, the parties amended Schedule B of the Tuscany Hotel Agreement to reflect that the room count at the Tuscany Hotel had decreased from 125 to 124 rooms.

[8] By Amendment to the Hotel 57 Agreement dated September 20, 2023 (the "Amendment to the Hotel 57 Agreement"), a true copy of which is attached as Exhibit 16, the parties amended section 18 and Schedule B of the Hotel 57 Agreement to reflect that Hotel 57 contained 216 guest rooms and that LuxUrban RE was authorized to operate 209 guest rooms and to exclude the remaining 7 guest rooms.

No. 58351-24059-01 (the "Hotel 57").  A true copy of the Hotel 57 Agreement is attached hereto as <u>Exhibit 15</u>.

24.     On or about February 7, 2024, TMH entered into the James Hotel Agreement with LuxUrban RE for the operation of a 353-room Trademark Collection® by Wyndham guest lodging facility located at 22 East 29th Street, New York, New York 10016-7406, designated as Site No. 58621-24059-02 ("The James Hotel").  A true copy of the James Hotel Agreement is attached hereto as <u>Exhibit 17</u>.

25.     On or about December 27, 2023, TMH entered into the Royalton Hotel Agreement with LuxUrban RE for the operation of a 168-room Trademark Collection® by Wyndham guest lodging facility located at 44 West 44th Street, New York, New York 10036, designated as Site No. 58647-24059-02 ("The Royalton Hotel").  A true copy of the Royalton Hotel Agreement is attached hereto as <u>Exhibit 18</u>.

26.     On or about August 2, 2023, TMH entered into the Astor Hotel Agreement with LuxUrban for the operation of a 42-room[9] Trademark Collection® by Wyndham guest lodging facility located at 956 Washington Avenue, Miami Beach, Florida 33139, designated as Site No. 58325-24053-02 (the "Astor Hotel").  A true copy of the Astor Hotel Agreement is attached hereto as <u>Exhibit 19</u>.

27.     On or about August 2, 2023, TMH entered into the Hotel Impala Agreement with LuxUrban for the operation of a 17-room Trademark Collection® by Wyndham guest lodging facility located at 1228 Collins Avenue, Miami Beach, Florida 33139, designated as Site No.

---

[9] By Amendment to the Astor Hotel Agreement dated October 10, 2023, a true copy of which is attached hereto as <u>Exhibit 20</u>, the parties amended Schedule B of the Astor Hotel Agreement to reflect that the room count at the Astor Hotel had decreased from 42 to 41 rooms.

9

58326-24053-02 (the "Hotel Impala").  A true copy of the Hotel Impala Agreement is attached hereto as Exhibit 21.

28.     On or about August 2, 2023, TMH entered into the La Flora Hotel Agreement with LuxUrban for the operation of a 31-room Trademark Collection® by Wyndham guest lodging facility located at 1238 Collins Avenue, Miami Beach, Florida 33139, designated as Site No. 58324-24053-02 (the "La Flora Hotel").  A true copy of the La Flora Hotel Agreement is attached hereto as Exhibit 22.

29.     On or about August 2, 2023, TMH entered into the Bogart Hotel Agreement with LuxUrban RE for the operation of a 65-room Trademark Collection® by Wyndham guest lodging facility located at 101 Bogart Street, Brooklyn, New York 11206, designated as Site No. 58328-24059-01 (the "Bogart Hotel").  A true copy of the Bogart Hotel Agreement is attached hereto as Exhibit 23.

30.     On or about August 2, 2023, TMH entered into the 12th & Ocean Hotel Agreement with LuxUrban for the operation of a 24-room Trademark Collection® by Wyndham guest lodging facility located at 1200 Ocean Drive, Miami Beach, Florida 33139, designated as Site No. 58323-24053-02 (the "12th & Ocean Hotel")[10].  A true copy of the 12th & Ocean Hotel Agreement is attached hereto as Exhibit 24.

            *ii.     The Signature Reservation Services Agreements for the Trademark Hotels*

31.     On or about August 2, 2023, WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "Townhouse Hotel SRS Agreement") pursuant to which WHG provided LuxUrban the option to utilize the services of reservation agents to handle calls

---

[10] The Townhouse Hotel, O Hotel, Blakely, Condor Hotel, Washington, Herald, Georgetown Residences, Lafayette, Variety Hotel, Tuscany Hotel, Hotel 57, James Hotel, Royalton Hotel, Astor Hotel, Hotel Impala, La Flora Hotel, Bogart Hotel, and the 12th & Ocean Hotel are referred to collectively herein as the "Trademark Hotels".

from guests seeking to make reservations at the Townhouse Hotel.  A true copy of the Townhouse Hotel SRS Agreement is attached hereto as <u>Exhibit 25</u>.

32.     On or about August 2, 2023, WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "O Hotel SRS Agreement") pursuant to which WHG provided LuxUrban the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the O Hotel.  A true copy of the O Hotel SRS Agreement is attached hereto as <u>Exhibit 26</u>.

33.     On or about August 2, 2023[11], WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "Blakely SRS Agreement") pursuant to which WHG provided LuxUrban the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the Blakely Hotel.  A true copy of the Blakely SRS Agreement is attached hereto as <u>Exhibit 27</u>.

34.     On or about August 2, 2023[12], WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "Condor Hotel SRS Agreement") pursuant to which WHG provided LuxUrban RE the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the Condor Hotel.  A true copy of the Condor Hotel SRS Agreement is attached hereto as <u>Exhibit 29</u>.

35.     On or about August 2, 2023, WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "Washington SRS Agreement") pursuant to which WHG provided LuxUrban the option to utilize the services of reservation agents to handle calls from

---

[11] By Amendment to the Blakely SRS Agreement dated November 3, 2023 (the "Amendment to the Blakely SRS Agreement"), a true copy of which is attached as <u>Exhibit 28</u>, the parties agreed to switch LuxUrban from the Digital Call Transfer Service option under the Blakely SRS Agreement to the Property Call Transfer Service option.

[12] By Amendment to the Condor Hotel SRS Agreement dated November 1, 2023 (the "Amendment to the Condor Hotel SRS Agreement"), a true copy of which is attached as <u>Exhibit 30</u>, the parties agreed to switch LuxUrban from the Digital Call Transfer Service option under the Condor Hotel SRS Agreement to the Property Call Transfer Service option.

16048774-1

guests seeking to make reservations at the Washington Hotel.  A true copy of the Washington SRS Agreement is attached hereto as <u>Exhibit 31</u>.

36.     On or about August 2, 2023[13], WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "Herald SRS Agreement") pursuant to which WHG provided LuxUrban the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the Herald Hotel.  A true copy of the Herald SRS Agreement is attached hereto as <u>Exhibit 32</u>.

37.     On or about August 2, 2023, WHG and Corphousing entered into a Signature Reservation Services Agreement (the "Georgetown Residences SRS Agreement") pursuant to which WHG provided the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the Georgetown Residences Hotel.  A true copy of the Georgetown Residences SRS Agreement is attached hereto as <u>Exhibit 34</u>.

38.     On or about August 2, 2023, WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "Lafayette Hotel SRS Agreement") pursuant to which WHG provided the services of reservation agents to handle calls from guests seeking to make reservations at the Lafayette Hotel.  A true copy of the Lafayette Hotel SRS Agreement is attached hereto as <u>Exhibit 35</u>.

39.     On or about August 2, 2023, WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "Variety Hotel SRS Agreement") pursuant to which WHG provided the option to utilize the services of reservation agents to handle calls from guests seeking

---

[13] By Amendment to the Herald SRS Agreement dated November 1, 2023 (the "Amendment to the Herald SRS Agreement"), a true copy of which is attached as <u>Exhibit 33</u>, the parties agreed to switch LuxUrban from the Digital Call Transfer Service option under the Herald SRS Agreement to the Property Call Transfer Service option.

to make reservations at the Variety Hotel.  A true copy of the Variety Hotel SRS Agreement is attached hereto as <u>Exhibit 36</u>.

40.     On or about August 2, 2023, WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "Tuscany Hotel SRS Agreement") pursuant to which WHG provided LuxUrban RE the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the Tuscany Hotel.  A true copy of the Tuscany Hotel SRS Agreement is attached hereto as <u>Exhibit 37</u>.

41.     On or about August 2, 2023[14], WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "Hotel 57 SRS Agreement") pursuant to which WHG provided LuxUrban RE the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the Hotel 57.  A true copy of the Hotel 57 SRS Agreement is attached hereto as <u>Exhibit 38</u>.

42.     On or about February 7, 2024, WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "James Hotel SRS Agreement") pursuant to which WHG provided LuxUrban RE the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at The James Hotel.  A true copy of the James Hotel SRS Agreement is attached hereto as <u>Exhibit 40</u>.

43.     On or about December 27, 2023, WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "Royalton Hotel SRS Agreement") pursuant to which WHG provided LuxUrban RE the option to utilize the services of reservation agents to handle calls from

---

[14] By Amendment to the Hotel 57 SRS Agreement dated November 1, 2023 (the "Amendment to the Hotel 57 SRS Agreement"), a true copy of which is attached as <u>Exhibit 39</u>, the parties agreed to switch LuxUrban RE from the Digital Call Transfer Service option under the Hotel 57 SRS Agreement to the Property Call Transfer Service option.

guests seeking to make reservations at The Royalton Hotel.  A true copy of the Royalton Hotel SRS Agreement is attached hereto as Exhibit 41.

44.     On or about August 2, 2023, WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "Astor Hotel SRS Agreement") pursuant to which WHG provided the services of reservation agents to handle calls from guests seeking to make reservations at the Astor Hotel.  A true copy of the Astor Hotel SRS Agreement is attached hereto as Exhibit 42.

45.     On or about August 2, 2023, WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "Hotel Impala SRS Agreement") pursuant to which WHG provided the services of reservation agents to handle calls from guests seeking to make reservations at the Hotel Impala.  A true copy of the Hotel Impala SRS Agreement is attached hereto as Exhibit 43.

46.     On or about August 2, 2023, WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "La Flora Hotel SRS Agreement") pursuant to which WHG provided the services of reservation agents to handle calls from guests seeking to make reservations at the La Flora Hotel.  A true copy of the La Flora Hotel SRS Agreement is attached hereto as Exhibit 44.

47.     On or about August 2, 2023, WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "Bogart Hotel SRS Agreement") pursuant to which WHG provided the services of reservation agents to handle calls from guests seeking to make reservations at the Bogart Hotel.  A true copy of the Bogart Hotel SRS Agreement is attached hereto as Exhibit 45.

48.     On or about August 2, 2023, WHG and LuxUrban entered into a Signature Reservation Services Agreement (the "12th & Ocean Hotel SRS Agreement") pursuant to which WHG provided the services of reservation agents to handle calls from guests seeking to make reservations at the 12th & Ocean Hotel.  A true copy of the 12th & Ocean Hotel SRS Agreement[15] is attached hereto as Exhibit 46.

    *iii.     The Master Information Technology Agreements for the Trademark Hotels*

49.     On or about August 2, 2023, TMH and LuxUrban entered into a Master Information Technology Agreement (the "Townhouse Hotel MITA") which governed LuxUrban's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Townhouse Hotel MITA is attached hereto as Exhibit 47.

50.     On or about August 2, 2023, TMH and LuxUrban RE entered into a Master Information Technology Agreement (the "O Hotel MITA") which governed LuxUrban RE's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the O Hotel MITA is attached hereto as Exhibit 48.

51.     On or about August 2, 2023, TMH and LuxUrban entered into a Master Information Technology Agreement (the "Blakely MITA") which governed LuxUrban's access, use, and display of certain technology services, software, and products provided by TMH or TMH's

---

[15] The Townhouse Hotel SRS Agreement, O Hotel SRS Agreement, Blakely SRS Agreement, Condor Hotel SRS Agreement, Washington SRS Agreement, Herald SRS Agreement, Georgetown Residences SRS Agreement, Lafayette SRS Agreement, Variety Hotel SRS Agreement, Tuscany Hotel SRS Agreement, Hotel 57 SRS Agreement, James Hotel SRS Agreement, Royalton Hotel SRS Agreement, Astor Hotel SRS Agreement, Hotel Impala SRS Agreement, La Flora Hotel SRS Agreement, Bogart Hotel SRS Agreement, and the 12th & Ocean Hotel SRS Agreement are referred to collectively herein as the "Trademark SRS Agreements".

16048774-1

authorized third-party product or service providers.  A true copy of the Blakely MITA is attached hereto as <u>Exhibit 49</u>.

52.      On or about August 2, 2023, TMH and LuxUrban RE entered into a Master Information Technology Agreement (the "Condor Hotel MITA") which governed LuxUrban RE's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Condor Hotel MITA is attached hereto as <u>Exhibit 50</u>.

53.      On or about August 2, 2023, TMH and LuxUrban entered into a Master Information Technology Agreement (the "Washington MITA") which governed LuxUrban's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Washington MITA is attached hereto as <u>Exhibit 51</u>.

54.      On or about August 2, 2023, TMH and LuxUrban entered into a Master Information Technology Agreement (the "Herald MITA") which governed LuxUrban's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Herald MITA is attached hereto as <u>Exhibit 52</u>.

55.      On or about August 2, 2023, TMH and Corphousing entered into a Master Information Technology Agreement (the "Georgetown Residences MITA") which governed Corphousing's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Georgetown Residences MITA is attached hereto as <u>Exhibit 53</u>.

16048774-1

56.     On or about August 2, 2023, TMH and LuxUrban entered into a Master Information Technology Agreement (the "Lafayette Hotel MITA") which governed LuxUrban's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Lafayette Hotel MITA is attached hereto as <u>Exhibit 54</u>.

57.     On or about August 2, 2023, TMH and LuxUrban entered into a Master Information Technology Agreement (the "Variety Hotel MITA") which governed LuxUrban's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Variety Hotel MITA is attached hereto as <u>Exhibit 55</u>.

58.     On or about August 2, 2023, TMH and LuxUrban RE entered into a Master Information Technology Agreement (the "Tuscany Hotel MITA") which governed LuxUrban RE's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Tuscany Hotel MITA is attached hereto as <u>Exhibit 56</u>.

59.     On or about August 2, 2023, TMH and LuxUrban RE entered into a Master Information Technology Agreement (the "Hotel 57 MITA") which governed LuxUrban RE's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Hotel 57 MITA is attached hereto as <u>Exhibit 57</u>.

60.     On or about February 7, 2024, TMH and LuxUrban RE entered into a Master Information Technology Agreement (the "James Hotel MITA") which governed LuxUrban RE's access, use, and display of certain technology services, software, and products provided by TMH

or TMH's authorized third-party product or service providers.  A true copy of the James Hotel

MITA is attached hereto as <u>Exhibit 58</u>.

61.     On or about December 27, 2023, TMH and LuxUrban RE entered into a Master

Information Technology Agreement (the "Royalton Hotel MITA") which governed LuxUrban

RE's access, use, and display of certain technology services, software, and products provided by

TMH or TMH's authorized third-party product or service providers.  A true copy of the Royalton

Hotel MITA is attached hereto as <u>Exhibit 59</u>.

62.     On or about August 2, 2023, TMH and LuxUrban entered into a Master Information

Technology Agreement (the "Astor Hotel MITA") which governed LuxUrban's access, use, and

display of certain technology services, software, and products provided by TMH or TMH's

authorized third-party product or service providers.  A true copy of the Astor Hotel MITA is

attached hereto as <u>Exhibit 60</u>.

63.     On or about August 2, 2023, TMH and LuxUrban entered into a Master Information

Technology Agreement (the "Hotel Impala MITA") which governed LuxUrban's access, use, and

display of certain technology services, software, and products provided by TMH or TMH's

authorized third-party product or service providers.  A true copy of the Hotel Impala MITA is

attached hereto as <u>Exhibit 61</u>.

64.     On or about August 2, 2023, TMH and LuxUrban entered into a Master Information

Technology Agreement (the "La Flora Hotel MITA") which governed LuxUrban's access, use,

and display of certain technology services, software, and products provided by TMH or TMH's

authorized third-party product or service providers.  A true copy of the La Flora Hotel MITA is

attached hereto as <u>Exhibit 62</u>.

16048774-1

65.     On or about August 2, 2023, TMH and LuxUrban RE entered into a Master Information Technology Agreement (the "Bogart Hotel MITA") which governed LuxUrban RE's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the Bogart Hotel MITA is attached hereto as <u>Exhibit 63</u>.

66.     On or about August 2, 2023, TMH and LuxUrban entered into a Master Information Technology Agreement (the "12th & Ocean Hotel MITA")[16] which governed LuxUrban's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers.  A true copy of the 12th & Ocean Hotel MITA is attached hereto as <u>Exhibit 64</u>.

> *iv.     The Terms of the Trademark Membership Agreements, Trademark SRS Agreements, and Trademark MITAs*

67.     Pursuant to section 5 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing were obligated to operate the Trademark Hotels as Trademark Collection® by Wyndham guest lodging facilities for twenty-year terms.

68.     Pursuant to section 3.2 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing were required to operate the Trademark Hotels continuously after the respective Opening Dates[17] on a year-round basis.

69.     Pursuant to section 7, section 18.1, and Schedule C of the Trademark Membership Agreements, section 1 and Schedule A of the Trademark SRS Agreements, and section 4 and

---

[16] The Townhouse Hotel MITA, O Hotel MITA, Blakely MITA, Condor Hotel MITA, Washington MITA, Herald MITA, Georgetown Residences MITA, Lafayette MITA, Variety Hotel MITA, Tuscany Hotel MITA, Hotel 57 MITA, James Hotel MITA, Royalton Hotel MITA, Astor Hotel MITA, Hotel Impala MITA, La Flora Hotel MITA, Bogart Hotel MITA, and the 12th & Ocean Hotel MITA are referred to collectively herein as the "Trademark MITAs".
[17] All capitalized terms not defined herein are as defined in the Trademark Membership Agreements, Travelodge Franchise Agreements, or Baymont Franchise Agreement.

16048774-1

Attachment 4.1 of the Trademark MITAs, LuxUrban, LuxUrban RE, and Corphousing were required to make certain periodic payments to TMH for membership fees, marketing fees, MITA fees, SRS fees, taxes, interest, and other fees (collectively, "Trademark Recurring Fees").

70.      Pursuant to section 7.3 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing agreed that interest is payable on any past due amount payable to TMH under the respective Trademark Membership Agreements at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.

71.      Pursuant to section 3.6.4 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing were required to prepare and submit monthly reports to TMH disclosing, among other things, the amount of gross room revenue earned by LuxUrban, LuxUrban RE, and Corphousing at the Trademark Hotels in the preceding month for purposes of establishing the amount of Trademark Recurring Fees due to TMH.

72.      Pursuant to section 3.6 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing agreed to maintain at the Trademark Hotels accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Trademark Hotels and, pursuant to sections 3.6 and 4.8 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing agreed to allow TMH to examine, audit, and make copies of the entries in these books, records, and accounts.

73.      Pursuant to section 3.11 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing agreed that they would "not permit or allow [their] officers, directors, principals, employees…to engage in conduct which is unlawful or damaging to the good will or public image of the Chain or System."

74.     Pursuant to section 3.2.3[18] of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing were required to accept payment in accordance with the Trademark Collection® System Standards Manual, which required LuxUrban, LuxUrban RE, and Corphousing to utilize a credit card payment processor integrated with TMH's designated approved vendor(s).

75.     Section 3.8 of the Trademark Membership Agreements required LuxUrban, LuxUrban RE, and Corphousing to provide TMH with proof of minimum insurance coverage.

76.     Section 18.5 of the Trademark Membership Agreements prohibits LuxUrban, LuxUrban RE, and Corphousing from issuing any press releases or making any other public-facing statements about any agreements between LuxUrban, LuxUrban RE, or Corphousing and TMH, without TMH's prior written consent, and also requires LuxUrban, LuxUrban RE, and Corphousing to ensure that no misrepresentation is made regarding the relationship between the parties.

77.     Pursuant to section 11.1 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and/or Corphousing would be in default under the Trademark Membership Agreements if they did not make payments due under the Trademark Membership Agreements, and if the default was not cured within (10) ten days after LuxUrban, LuxUrban RE, and/or Corphousing received written notice from TMH, TMH could terminate the Trademark Membership Agreements under section 11.2 of the Trademark Membership Agreements.

78.     Pursuant to section 11.2 of the Trademark Membership Agreements, TMH could terminate the Trademark Membership Agreements, with notice to LuxUrban, LuxUrban RE, and/or Corphousing for various reasons, including LuxUrban, LuxUrban RE, and/or

---

[18] This section is identified as section 3.1.3 in the Hotel Agreements, but is contained within section 3.2 of the Hotel Agreements and therefore would be properly classified as section 3.2.3.

21

Corphousing's: (a) failure to pay any amount due to TMH under the Trademark Membership Agreements, (b) failure to cure a default as provided in section 11.1, (c) failure to pay debts as they come due in the ordinary course of business, (d) commission of an act or failure to act, that in TMH's reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Trademark Collection® by Wyndham Marks or System, (e) failure to perform Improvement Obligations pursuant to Schedule D of the Trademark Membership Agreements, (f) failure to operate the Trademark Hotels as Trademark Collection® by Wyndham guest lodging establishments, and/or (g) failure to maintain possession or the right to possession of the Trademark Hotels.

79.     Pursuant to sections 12.1 and 18.2.1[19] of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing agreed that, in the event of a termination of the Trademark Membership Agreements pursuant to section 11.2, they would pay Liquidated Damages to TMH in accordance with a formula specified in the Trademark Membership Agreements.

80.     Section 18.2.1 of each of the Trademark Membership Agreements specifically set Liquidated Damages, for the respective Trademark Membership Agreements that were terminated after the Opening Date, at the greater of: (i) $3,000 for each guest room of the respective Trademark Hotel that  LuxUrban, LuxUrban RE, or Corphousing was authorized to operate pursuant to Schedule B of the relevant Trademark Membership Agreements, prior to any room count reductions, or (ii) an amount equal to the average monthly Membership Fee accrued at the relevant Trademark Hotels during the one (1) year period immediately preceding Termination multiplied by eighteen (18) (or the number of months remaining in the term, whichever is less).

---

[19] The Blakely Agreement and the Washington Agreement identify this provision as section 18.2.2.

16048774-1

81.     Pursuant to section 12.1 of the Trademark Membership Agreements, if the Trademark Membership Agreements were terminated under Schedule D before the Opening Date, LuxUrban, LuxUrban RE, or Corphousing were required to pay Liquidated Damages as to the relevant Trademark Membership Agreement in an amount equal to $1,500 per guest room described on Schedule B of the Trademark Membership Agreements.

82.     Pursuant to section 17.4 of the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce [the Trademark Membership Agreements] or collect amounts owed under [the Trademark Membership Agreements]."

83.     Pursuant to section 1.1 of Schedule D to the Trademark Membership Agreements, LuxUrban, LuxUrban RE, and Corphousing were obligated to prove that they owned or leased the Trademark Hotels by the earlier of thirty (30) days from the execution of the Trademark Membership Agreements or the respective Opening Dates, and to maintain control of the Trademark Hotels during the term of the Trademark Membership Agreements.

84.     Pursuant to section 1.2 of Schedule D of the Trademark Membership Agreements, TMH could terminate the Trademark Membership Agreements if LuxUrban, LuxUrban RE, and Corphousing failed to complete the pre-opening improvements by the dates specified in the Property Improvement Plan.

85.     Pursuant to section 18.8 and Schedule D of the James Hotel Agreement, LuxUrban RE agreed that "the deadline to complete all pre-opening items and renovations listed as 'to be completed prior to opening' on the [Property Improvement Plan] shall be no later than March 31, 2024."

86.     Pursuant to section 18.8 and Schedule D of the Royalton Hotel Agreement, LuxUrban RE agreed that "the deadline to complete all pre-opening items and renovations listed as 'to be completed prior to opening' on the [Property Improvement Plan] shall be no later than December 31, 2023."

*v.     The Guaranties of the Trademark Membership Agreements*

87.     Effective as of the date of the Townhouse Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Townhouse Hotel Guaranty") of LuxUrban's obligations under the Townhouse Hotel Agreement.  A true copy of the Townhouse Hotel Guaranty is attached hereto as Exhibit 65.

88.     Effective as of the date of the O Hotel Agreement, Ferdinand provided TMH with a guaranty (the "O Hotel Guaranty") of LuxUrban RE's obligations under the O Hotel Agreement. A true copy of the O Hotel Guaranty is attached hereto as Exhibit 66.

89.     Effective as of the date of the Blakely Agreement, Ferdinand provided TMH with a guaranty (the "Blakely Guaranty") of LuxUrban's obligations under the Blakely Agreement.  A true copy of the Blakely Guaranty is attached hereto as Exhibit 67.

90.     Effective as of the date of the Condor Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Condor Hotel Guaranty") of LuxUrban RE's obligations under the Condor Hotel Agreement.  A true copy of the Condor Hotel Guaranty is attached hereto as Exhibit 68.

91.      Effective as of the date of the Washington Agreement, Ferdinand provided TMH with a guaranty (the "Washington Guaranty") of LuxUrban's obligations under the Washington Agreement.  A true copy of the Washington Guaranty is attached hereto as Exhibit 69.

16048774-1

92.     Effective as of the date of the Herald Agreement, Ferdinand provided TMH with a guaranty (the "Herald Guaranty") of LuxUrban's obligations under the Herald Agreement.  A true copy of the Herald Guaranty is attached hereto as <u>Exhibit 70</u>.

93.     Effective as of the date of the Townhouse Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Georgetown Residence Guaranty") of Corphousing's obligations under the Townhouse Hotel Agreement.  A true copy of the Georgetown Residence Guaranty is attached hereto as <u>Exhibit 71</u>.

94.     Effective as of the date of the Lafayette Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Lafayette Hotel Guaranty") of LuxUrban's obligations under the Lafayette Hotel Agreement.  A true copy of the Lafayette Hotel Guaranty is attached hereto as <u>Exhibit 72</u>.

95.     Effective as of the date of the Variety Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Variety Hotel Guaranty") of LuxUrban's obligations under the Variety Hotel Agreement.  A true copy of the Variety Hotel Guaranty is attached hereto as <u>Exhibit 73</u>.

96.     Effective as of the date of the Tuscany Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Tuscany Hotel Guaranty") of LuxUrban RE's obligations under the Tuscany Hotel Agreement.  A true copy of the Tuscany Hotel Guaranty is attached hereto as <u>Exhibit 74</u>.

97.     Effective as of the date of the Hotel 57 Agreement, Ferdinand provided TMH with a guaranty (the "Hotel 57 Guaranty") of LuxUrban RE's obligations under the Hotel 57 Agreement.  A true copy of the Hotel 57 Guaranty is attached hereto as <u>Exhibit 75</u>.

98.     Effective as of the date of the James Hotel Agreement, Ferdinand provided TMH with a guaranty (the "James Hotel Guaranty") of LuxUrban RE's obligations under the James Hotel Agreement.  A true copy of the James Hotel Guaranty is attached hereto as <u>Exhibit 76</u>.

16048774-1

99.     Effective as of the date of the Royalton Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Royalton Hotel Guaranty") of LuxUrban RE's obligations under the Royalton Hotel Agreement.  A true copy of the Royalton Hotel Guaranty is attached hereto as Exhibit 77.

100.     Effective as of the date of the Astor Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Astor Hotel Guaranty") of LuxUrban's obligations under the Astor Hotel Agreement.  A true copy of the Astor Hotel Guaranty is attached hereto as Exhibit 78.

101.     Effective as of the date of the Hotel Impala Agreement, Ferdinand provided TMH with a guaranty (the "Hotel Impala Guaranty") of LuxUrban's obligations under the Hotel Impala Agreement.  A true copy of the Hotel Impala Guaranty is attached hereto as Exhibit 79.

102.     Effective as of the date of the La Flora Hotel Agreement, Ferdinand provided TMH with a guaranty (the "La Flora Hotel Guaranty") of LuxUrban's obligations under the La Flora Hotel Agreement.  A true copy of the La Flora Hotel Guaranty is attached hereto as Exhibit 80.

103.     Effective as of the date of the Bogart Hotel Agreement, Ferdinand provided TMH with a guaranty (the "Bogart Hotel Guaranty") of LuxUrban RE's obligations under the Bogart Hotel Agreement.  A true copy of the Bogart Hotel Guaranty is attached hereto as Exhibit 81.

104.     Effective as of the date of the 12th & Ocean Hotel Agreement, Ferdinand provided TMH with a guaranty (the "12th & Ocean Hotel Guaranty")[20] of LuxUrban's obligations under the 12th & Ocean Hotel Agreement.  A true copy of the 12th & Ocean Hotel Guaranty is attached hereto as Exhibit 82.

---

[20]   The Townhouse Hotel Guaranty, O Hotel Guaranty, Blakely Guaranty, Condor Hotel Guaranty, Washington Guaranty, Herald Guaranty, Georgetown Residences Guaranty, Lafayette Guaranty, Variety Hotel Guaranty, Tuscany Hotel Guaranty, Hotel 57 Guaranty, James Hotel Guaranty, Royalton Hotel Guaranty, Astor Hotel Guaranty, Hotel Impala Guaranty, La Flora Hotel Guaranty, Bogart Hotel Guaranty, and the 12th & Ocean Hotel Guaranty are referred to collectively herein as the "Trademark Guaranties".

16048774-1

105.    Pursuant to the terms of the Trademark Guaranties, Ferdinand agreed, among other things, that upon a default under the Trademark Membership Agreements, he would immediately make each payment and perform or cause LuxUrban, LuxUrban RE, and Corphousing to perform each unpaid or unperformed obligation of LuxUrban, LuxUrban RE, and Corphousing under the Trademark Membership Agreements.

106.    Pursuant to the terms of the Trademark Guaranties, Ferdinand agreed to pay the costs, including reasonable attorneys' fees, incurred by TMH in enforcing its rights or remedies under the Trademark Guaranties or the Trademark Membership Agreements.

*vi.*    *The Trademark Hotels' Development Incentive Notes*

107.    In connection with entering into the Townhouse Hotel Agreement and effective as of August 2, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $210,000.00 (the "Townhouse Hotel Note").  A true copy of the Townhouse Hotel Note is attached hereto as Exhibit 83.

108.    Pursuant to the terms of the Townhouse Hotel Note, the principal sum of $210,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Townhouse Hotel Note), in an amount equal to the principal amount of the Townhouse Hotel Note divided equally by the number of complete years remaining in the term of the Townhouse Hotel Agreement.

109.    In connection with entering into the O Hotel Agreement and effective as of August 2, 2023, as amended on September 12, 2023, LuxUrban RE made, and Ferdinand co-made, a Development Incentive Note in the amount of $234,500.00 (the "O Hotel Note").  A true copy of the O Hotel Note is attached hereto as Exhibit 84.

16048774-1

110.     Pursuant to the terms of the O Hotel Note, the principal sum of $234,500.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the O Hotel Note), in an amount equal to the principal amount of the O Hotel Note divided equally by the number of complete years remaining in the O Hotel Agreement.

111.     In connection with entering into the Blakely Agreement and effective as of August 2, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $643,500.00 (the "Blakely Note").  A true copy of the Blakely Note is attached hereto as Exhibit 85.

112.     Pursuant to the terms of the Blakely Note, the principal sum of $643,500.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Blakely Note), in an amount equal to the principal amount of the Blakely Note divided equally by the number of complete years remaining in the Blakely Agreement.

113.     In connection with entering into the Condor Hotel Agreement and effective as of August 2, 2023, LuxUrban RE made, and Ferdinand co-made, a Development Incentive Note in the amount of $175,000.00 (the "Condor Hotel Note").  A true copy of the Condor Hotel Note is attached hereto as Exhibit 86.

114.     Pursuant to the terms of the Condor Hotel Note, the principal sum of $175,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Condor Hotel Note), in an amount equal to the principal amount of the Condor Hotel Note divided equally by the number of complete years remaining in the term of the Condor Hotel Agreement.

115.     In connection with entering into the Washington Agreement and effective as of August 2, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the

amount of $1,302,000.00 (the "Washington Note").  A true copy of the Washington Note is attached hereto as <u>Exhibit 87</u>.

116.    Pursuant to the terms of the Washington Note, the principal sum of $1,302,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Washington Note), in an amount equal to the principal amount of the Washington Note divided equally by the number of complete years remaining in the Washington Agreement.

117.    In connection with entering into the Herald Agreement and effective as of August 2, 2023, as amended on September 12, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $913,000.00 (the "Herald Note").  A true copy of the Herald Note is attached hereto as <u>Exhibit 88</u>.

118.    Pursuant to the terms of the Herald Note, the principal sum of $913,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Herald Note), in an amount equal to the principal amount of the Herald Note divided equally by the number of complete years remaining in the term of the Herald Agreement.

119.    In connection with entering into the Georgetown Residences Agreement and effective as of August 2, 2023, Corphousing made, and Ferdinand co-made, a Development Incentive Note in the amount of $360,000.00 (the "Georgetown Residences Note").[21]  A true copy of the Georgetown Residences Note is attached hereto as <u>Exhibit 89</u>.

120.    Pursuant to the terms of the Georgetown Residences Note, the principal sum of $360,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Georgetown Residences Note), in an amount equal to the principal amount of

---

[21] Pursuant to section 18.3 of the Townhouse Hotel Agreement, only the first installment of $180,000.00 was disbursed to Corphousing.

16048774-1

the Georgetown Residences Note divided equally by the number of complete years remaining in the term of the Georgetown Residences Agreement.

121.     In connection with entering into the Lafayette Hotel Agreement and effective as of August 2, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $180,000.00 (the "Lafayette Hotel Note").  A true copy of the Lafayette Hotel Note is attached hereto as <u>Exhibit 90</u>.

122.     Pursuant to the terms of the Lafayette Hotel Note, the principal sum of $180,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Lafayette Hotel Note), in an amount equal to the principal amount of the Lafayette Hotel Note divided equally by the number of complete years remaining in the term of the Lafayette Hotel Agreement.

123.     In connection with entering into the Variety Hotel Agreement and effective as of August 2, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $272,000.00 (the "Variety Hotel Note").  A true copy of the Variety Hotel Note is attached hereto as <u>Exhibit 91</u>.

124.     Pursuant to the terms of the Variety Hotel Note, the principal sum of $272,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Variety Hotel Note), in an amount equal to the principal amount of the Variety Hotel Note divided equally by the number of complete years remaining in the term of the Variety Hotel Agreement.

125.     In connection with entering into the Tuscany Hotel Agreement and effective as of August 2, 2023, as amended on September 29, 2023, LuxUrban RE made, and Ferdinand co-made,

a Development Incentive Note in the amount of $744,000.00 (the "Tuscany Hotel Note").  A true copy of the Tuscany Hotel Note is attached hereto as <u>Exhibit 92</u>.

126.    Pursuant to the terms of the Tuscany Hotel Note, the principal sum of $744,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Tuscany Hotel Note), in an amount equal to the principal amount of the Tuscany Hotel Note divided equally by the number of complete years remaining in the term of the Tuscany Hotel Agreement.

127.    In connection with entering into the Hotel 57 Agreement and effective as of August 2, 2023, as amended September 20, 2023, LuxUrban RE made, and Ferdinand co-made, a Development Incentive Note in the amount of $1,201,750.00 (the "Hotel 57 Note").  A true copy of the Hotel 57 Note is attached hereto as <u>Exhibit 93</u>.

128.    Pursuant to the terms of the Hotel 57 Note, the principal sum of $1,201,750.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Hotel 57 Note), in an amount equal to the principal amount of the Hotel 57 Note divided equally by the number of complete years remaining in the term of the Hotel 57 Agreement.

129.    In connection with entering into the James Hotel Agreement and effective as of February 7, 2024, LuxUrban RE made, and Ferdinand co-made, a Development Incentive Note in the amount of $3,000,500.00 (the "James Hotel Note").  A true copy of the James Hotel Note is attached hereto as <u>Exhibit 94</u>.

130.    Pursuant to the terms of the James Hotel Note, the principal sum of $3,000,500.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the James Hotel Note), in an amount equal to the principal amount of the James Hotel Note divided equally by the number of complete years remaining in the term of the James Hotel Agreement.

16048774-1

131.    In connection with entering into the Astor Hotel Agreement and effective as of August 2, 2023, as amended on October 10, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $164,000.00 (the "Astor Hotel Note").  A true copy of the Astor Hotel Note is attached hereto as <u>Exhibit 95</u>.

132.    Pursuant to the terms of the Astor Hotel Note, the principal sum of $164,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Astor Hotel Note), in an amount equal to the principal amount of the Astor Hotel Note divided equally by the number of complete years remaining in the term of the Astor Hotel Agreement.

133.    In connection with entering into the Hotel Impala Agreement and effective as of August 2, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $68,000.00 (the "Hotel Impala Note").  A true copy of the Hotel Impala Note is attached hereto as <u>Exhibit 96</u>.

134.    Pursuant to the terms of the Hotel Impala Note, the principal sum of $68,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Hotel Impala Note), in an amount equal to the principal amount of the Hotel Impala Note divided equally by the number of complete years remaining in the term of the Hotel Impala Agreement.

135.    In connection with entering into the La Flora Hotel Agreement and effective as of August 2, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $124,000.00 (the "La Flora Hotel Note").  A true copy of the La Flora Hotel Note is attached hereto as <u>Exhibit 97</u>.

136.    Pursuant to the terms of the La Flora Hotel Note, the principal sum of $124,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in

16048774-1

the La Flora Hotel Note), in an amount equal to the principal amount of the La Flora Hotel Note divided equally by the number of complete years remaining in the term of the La Flora Hotel Agreement.

137.    In connection with entering into the Bogart Hotel Agreement and effective as of August 2, 2023, LuxUrban RE made, and Ferdinand co-made, a Development Incentive Note in the amount of $295,500.00 (the "Bogart Hotel Note").  A true copy of the Bogart Hotel Note is attached hereto as Exhibit 98.

138.    Pursuant to the terms of the Bogart Hotel Note, the principal sum of $295,500.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Bogart Hotel Note), in an amount equal to the principal amount of the Bogart Hotel Note divided equally by the number of complete years remaining in the term of the Bogart Hotel Agreement.

139.    In connection with entering into the 12th & Ocean Hotel Agreement and effective as of August 2, 2023, LuxUrban made, and Ferdinand co-made, a Development Incentive Note in the amount of $96,000.00[22]  (the "12th & Ocean Hotel Note")[23]. A true copy of the 12th & Ocean Hotel Note is attached hereto as Exhibit 99.

140.    Pursuant to the terms of the 12th & Ocean Hotel Note, the principal sum of $96,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the 12th & Ocean Hotel Note), in an amount equal to the principal amount of the 12th

---

[22] Pursuant to section 18.3 of the 12th & Ocean Hotel Agreement, only the first installment of $48,000.00 was disbursed to LuxUrban.

[23] The Townhouse Hotel Note, O Hotel Note, Blakely Note, Condor Hotel Note, Washington Note, Herald Note, Georgetown Residences Note, Lafayette Note, Variety Hotel Note, Tuscany Hotel Note, Hotel 57 Note, James Hotel Note, Royalton Hotel Note, Astor Hotel Note, Hotel Impala Note, La Flora Hotel Note, Bogart Hotel Note, and the 12th & Ocean Hotel Note are referred to collectively herein as the "Trademark Notes".

33

& Ocean Hotel Note divided equally by the number of complete years remaining in the term of the 12th & Ocean Hotel Agreement.

141.     Pursuant to Trademark Notes, LuxUrban, LuxUrban RE, and Corphousing became subject to the obligation to repay or discharge the Trademark Notes upon receipt of any portion of the principal amounts.

142.     TMH funded the Trademark Notes.

143.     The Trademark Notes provide that if a termination of the Trademark Membership Agreements occurs for any reason, "the outstanding, unamortized principal balance of [the Trademark Notes] shall be immediately due and payable without further notice, demand, or presentment."

144.     Pursuant to the terms of the Trademark Notes, if the Trademark Notes are not paid within ten (10) days after they are due, the outstanding principal balance shall bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by applicable law from its due date until paid.

145.     The Trademark Notes also provide that if the Trademark Notes are "collected by or through an attorney at law, [TMH] shall be entitled to collect reasonable attorney's fees and all costs of collection."

  *b.   The Travelodge® Facilities*

   *i.   The Travelodge Franchise Agreements*

146.     On or about August 2, 2023, THI entered into the BeHome Agreement with Corphousing for the operation of a 44-room[24] Travelodge® guest lodging facility located 765 8th

---

[24] By Amendment to the Franchise Agreement dated September 18, 2023 (the "September 18, 2023, THI Amendment"), a true copy of which is attached as Exhibit 101, the parties amended Schedule B of the BeHome Agreement to reflect that the room count at the BeHome Facility had decreased from 44 to 43 rooms.

16048774-1

Avenue, New York, New York 10036, designated as Site No. 58327-24049-01 (the "BeHome Facility"). A true copy of the BeHome Agreement is attached hereto as Exhibit 100.

147. On or about December 8, 2023, THI entered into the Hotel 46 Agreement with LuxUrban RE for the operation of a 79-room Travelodge® guest lodging facility located 129 West 46th Street, New York, New York 10036, designated as Site No. 58329-24059-03 (the "Hotel 46 Facility")[25]. A true copy of the Hotel 46 Agreement is attached hereto as Exhibit 102.

ii.     *The Signature Reservation Services Agreements for the Travelodge Facilities*

148. On or about August 2, 2023, WHG and Corphousing entered into a Signature Reservation Services Agreement (the "BeHome SRS Agreement") pursuant to which WHG provided Corphousing the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the BeHome Facility. A true copy of the BeHome SRS Agreement is attached hereto as Exhibit 103.

149. On or about December 8, 2023, WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "Hotel 46 SRS Agreement")[26] pursuant to which WHG provided LuxUrban RE the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the Hotel 46 Facility. A true copy of the Hotel 46 SRS Agreement is attached hereto as Exhibit 104.

iii.    *The Master Information Technology Agreements for the Travelodge Facilities*

---

[25] The BeHome Facility and the Hotel 46 Facility are referred to collectively herein as the "Travelodge Facilities".
[26] The BeHome SRS Agreement and the Hotel 46 SRS Agreement are referred to collectively herein as the "Travelodge SRS Agreements".

16048774-1

150.     On or about August 2, 2023, THI and Corphousing entered into a Master Information Technology Agreement (the "BeHome MITA") which governed Corphousing's access, use and display of certain technology services, software, and products provided by THI or THI's authorized third-party product or service providers. A true copy of the BeHome MITA is attached hereto as <u>Exhibit 105</u>.

151.     On or about December 8, 2023, THI and LuxUrban RE entered into a Master Information Technology Agreement (the "Hotel 46 MITA")[27] which governed LuxUrban's access, use, and display of certain technology services, software, and products provided by TMH or TMH's authorized third-party product or service providers. A true copy of the Hotel 46 MITA is attached hereto as <u>Exhibit 106</u>.

iv.     *The Terms of the Travelodge Franchise Agreements, Travelodge SRS Agreements, and Travelodge MITAs*

152.     Pursuant to section 5 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE were obligated to operate Travelodge® guest lodging facilities for fifteen-year terms.

153.     Pursuant to section 7, section 18.1, and Schedule C of the Travelodge Franchise Agreements, section 1 and Schedule A of the Travelodge SRS Agreements, and section 4 and attachment 4.1 of the Travelodge MITAs, Corphousing and LuxUrban RE were required to make certain periodic payments to THI for royalties, system assessment fees, MITA fees, SRS fees, taxes, interest, and other fees (collectively, "Travelodge Recurring Fees").

154.     Pursuant to section 7.3 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE agreed that interest is payable on any past due amount payable to THI under the

---

[27] The BeHome MITA and the Hotel 46 MITA are referred to collectively herein as the "Travelodge MITAs".

16048774-1

respective Travelodge Franchise Agreements at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.

155.    Pursuant to section 3.6.4 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE were required to prepare and submit monthly reports to THI disclosing, among other things, the amount of gross room revenue earned by Corphousing and LuxUrban RE at the Travelodge Facilities in the preceding month for purposes of establishing the amount of Travelodge Recurring Fees due to THI.

156.    Pursuant to section 3.6 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE agreed to maintain at the Travelodge Facilities accurate financial information, including books, records, and accounts, relating to the gross room revenue of Travelodge Facilities and, pursuant to sections 3.6 and 4.8 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE agreed to allow THI  to examine, audit, and make copies of the entries in these books, records, and accounts.

157.    Pursuant to section 3.11 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE agreed that it would "not permit or allow [their] officers, directors, principals, employees…to engage in conduct which is unlawful or damaging to the good will or public image of the Chain or System."

158.    Pursuant to section 3.2.3 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE were required to accept payment in accordance with the Travelodge® System Standards Manual, which required Corphousing and LuxUrban RE to utilize a credit card payment processor integrated with THI's designated approved vendor(s).

159.    Section 3.8 of the Travelodge Franchise Agreements required Corphousing and LuxUrban RE to provide THI with proof of minimum insurance coverage.

160.    Section 18.5 of the Travelodge Franchise Agreements prohibits Corphousing and LuxUrban RE from issuing any press releases or making any other public-facing statements about any agreements between Corphousing or LuxUrban RE and THI, without THI's prior written consent, and also requires Corphousing and LuxUrban RE to ensure that no misrepresentation is made regarding the relationship between the parties.

161.    Pursuant to section 11.1 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE would be in default under the Travelodge Franchise Agreements if they did not make payments due under the Travelodge Franchise Agreements, and if the default was not cured within ten (10) days after Corphousing and/or LuxUrban RE received written notice from THI, THI could terminate the Travelodge Franchise Agreements under section 11.2 of the Travelodge Franchise Agreements.

162.    Pursuant to section 11.2 of the Travelodge Franchise Agreements, THI could terminate the Travelodge Franchise Agreements, with notice to Corphousing and LuxUrban RE for various reasons, including Corphousing and/or LuxUrban RE's: (a) failure to pay any amount due THI under the Travelodge Franchise Agreements, (b) failure to cure a default as provided in section 11.1, (c) failure to pay debts as they come due in the ordinary course of business, (d) commission of an act or failure to act, that in THI's reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Travelodge® Marks or System, (e) failure to perform Improvement Obligations pursuant to Schedule D of the Travelodge Franchise Agreements, (f) failure to operate the Travelodge Facilities as Travelodge® guest lodging establishments, and/or (g) failure to maintain possession or the right to possession of the Travelodge Facilities.

38

163.     Pursuant to sections 12.1 and 18.2.1 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE agreed that, in the event of a termination of the Travelodge Franchise Agreements pursuant to section 11.2, they would pay Liquidated Damages to THI in accordance with a formula specified in the relevant Travelodge Franchise Agreements.

164.     Section 18.2.1 of the Travelodge Franchise Agreements specifically set Liquidated Damages, for the respective Travelodge Franchise Agreements that were terminated after the Opening Date, Travelodge Facilities at the greater of: (i) $2,000 for each guest room of the relevant Travelodge Facilities that Corphousing and/or LuxUrban RE were authorized to operate pursuant to Schedule B of the relevant Travelodge Franchise Agreements, prior to any room count reductions, or (ii) an amount equal to the average monthly Royalty Fee accrued at the relevant Travelodge Facilities during the one (1) year period immediately preceding Termination multiplied by eighteen (18) (or the number of months remaining in the term, whichever is less).

165.     Pursuant to section 12.1 of the Travelodge Franchise Agreements, if the Travelodge Franchise Agreements were terminated under Schedule D before the Opening Date, Corphousing and LuxUrban RE were required to pay Liquidated Damages related to the relevant Travelodge Franchise Agreement, in an amount equal to $1,000 per guest room described on Schedule B of the relevant Travelodge Franchise Agreements.

166.     Pursuant to section 17.4 of the Travelodge Franchise Agreements, Corphousing and LuxUrban RE agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce [the Travelodge Franchise Agreements] or collect amounts owed under [the Travelodge Franchise Agreements]."

167.     Pursuant to section 1.1 of Schedule D to the Hotel 46 Agreement, LuxUrban RE was obligated to prove that it owned or leased the Hotel 46 by the earlier of thirty (30) days from

the execution of the Hotel 46 Agreement or the Opening Date, and to maintain control of the Hotel 46 during the term of the Hotel 46 Agreement.

168.    Pursuant to section 1.2 of Schedule D of the Hotel 46 Agreement, THI could terminate the Hotel 46 Agreement if LuxUrban RE failed to complete the pre-opening improvements by the dates specified in the Property Improvement Plan.

169.    Pursuant to section 18.6 and Schedule D of the Hotel 46 Agreement, LuxUrban RE agreed that "the deadline to complete all pre-opening items and renovations listed as 'to be completed prior to opening' on the [Property Improvement Plan] shall be no later than January 31, 2024."

*iv.    The Guaranties of the Travelodge Franchise Agreements*

170.    Effective as of the date of the BeHome Agreement, Ferdinand provided THI with a guaranty (the "BeHome Guaranty") of Corphousing's obligations under the BeHome Agreement. A true copy of the BeHome Guaranty is attached hereto as Exhibit 107.

171.    Effective as of the date of the Hotel 46 Agreement, Ferdinand provided THI with a guaranty (the "Hotel 46 Guaranty")[28] of LuxUrban RE's obligations under the Hotel 46 Agreement.  A true copy of the Hotel 46 Guaranty is attached hereto as Exhibit 108.

172.    Pursuant to the terms of the Travelodge Guaranties, Ferdinand agreed, among other things, that upon a default under the Travelodge Franchise Agreements, he would "immediately make each payment and perform or cause [Corphousing and LuxUrban RE] to perform, each unpaid or unperformed obligation of [Corphousing and LuxUrban RE] under the [Travelodge Franchise Agreements]."

---

[28] The BeHome Guaranty and Hotel 46 Guaranty are collectively referred to herein as the "Travelodge Guaranties".

173.    Pursuant to the terms of the Travelodge Guaranties, Ferdinand agreed to pay the costs, including reasonable attorneys' fees, incurred by THI in enforcing its rights or remedies under the Travelodge Guaranties or the Travelodge Franchise Agreements.

*v.    The Travelodge Development Incentive Note*

174.    In connection with entering into the BeHome Agreement and effective as of August 2, 2023, as amended on September 18, 2023, Corphousing made, and Ferdinand co-made, a Development Incentive Note in the amount of $193,500.00 (the "Travelodge Note").  A true copy of the Travelodge Note is attached hereto as Exhibit 109.

175.    Pursuant to the terms of the Travelodge Note, the principal sum of $193,500.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Travelodge Note), in an amount equal to the principal amount of the Travelodge Note divided equally by the number of complete years remaining in the BeHome Agreement.

176.    Pursuant to Travelodge Note, Corphousing became subject to the obligation to repay or discharge the Travelodge Note upon receipt of any portion of the principal amount.

177.    THI funded the Travelodge Note.

178.    The Travelodge Note provides that if a termination of the Travelodge Franchise Agreements occurs for any reason, "the outstanding, unamortized principal balance of [the Travelodge Note] shall be immediately due and payable without further notice, demand or presentment."

179.    Pursuant to the terms of the Travelodge Note, if the Travelodge Note is not paid within ten (10) days after it is due, the outstanding principal balance shall bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by applicable law from its due date until paid.

41

180.    The Travelodge Note also provides that "[if the Travelodge Note]is collected by or through an attorney at law, [THI] shall be entitled to collect reasonable attorneys' fees and all costs of collection."

       *c.   The Baymont® Facility*

         *iv.    The Baymont Franchise Agreement, Signature Reservation System Agreement and Master Information Technology Agreement*

181.    On or about December 6, 2023, BFS entered into the Baymont Franchise Agreement with LuxUrban RE for the operation of a 74-room Baymont by Wyndham® guest lodging facility located 62 Madison Avenue, New York, New York 10016, designated as Site No. 58573-24059-01 (the "Baymont Facility").  A true copy of the Baymont Franchise Agreement is attached hereto as Exhibit 110.

182.    On or about December 6, 2024, WHG and LuxUrban RE entered into a Signature Reservation Services Agreement (the "Baymont SRS Agreement") pursuant to which WHG provided LuxUrban RE the option to utilize the services of reservation agents to handle calls from guests seeking to make reservations at the Baymont Facility. A true copy of the Baymont SRS Agreement is attached hereto as Exhibit 111.

183.    On or about December 6, 2023, LuxUrban RE entered into a Master Information Technology Agreement (the "Baymont MITA") which governed LuxUrban RE's access, use and display of technology services, software, and products provided by BFS or BFS's authorized third-party product or service providers. A true copy of the Baymont MITA is attached hereto as Exhibit 112.

16048774-1

184.     Pursuant to section 5 of the Baymont Franchise Agreement, LuxUrban RE was obligated to operate the Baymont Facility, also known as Hotel 27, as a Baymont by Wyndham® guest lodging facility for a twenty-year term.

185.     Pursuant to section 7, section 18.1, and Schedule C of the Baymont Franchise Agreement, section 1 and Schedule A of the Baymont SRS Agreement, and section 4 and attachment 4.1 of the Baymont MITA, LuxUrban RE was required to make certain periodic payments to BFS for royalties, system assessment fees, MITA fees, SRS fees, taxes, interest, and other fees (collectively, "Baymont Recurring Fees").

186.     Pursuant to section 7.3 of the Baymont Franchise Agreement, LuxUrban RE agreed that interest is payable "on any past due amount payable to [BFS] under this [Baymont Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

187.     Pursuant to section 3.6.4 of the Baymont Franchise Agreement, LuxUrban RE was required to prepare and submit monthly reports to BFS disclosing, among other things, the amount of gross room revenue earned by LuxUrban RE at the Baymont Facility in the preceding month for purposes of establishing the amount of Baymont Recurring Fees due to BFS.

188.     Pursuant to section 3.6 of the Baymont Franchise Agreement, LuxUrban RE agreed to maintain at the Baymont Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Baymont Facility and, pursuant to sections 3.6 and 4.8 of the Baymont Franchise Agreement, LuxUrban RE agreed to allow BFS to examine, audit, and make copies of the entries in these books, records, and accounts.

189.     Pursuant to section 3.11 of the Baymont Franchise Agreement, LuxUrban RE agreed that it would "not permit or allow [its] officers, directors, principals, employees…to engage

43

in conduct which is unlawful or damaging to the good will or public image of the Chain or System."

190.    Pursuant to section 3.2.3 of the Baymont Franchise Agreement, LuxUrban RE was required to accept payment in accordance with the Baymont® System Standards Manual, which required LuxUrban RE to utilize a credit card payment processor integrated with BFS's designated approved vendor(s).

191.    Section 3.8 of the Baymont Franchise Agreement required LuxUrban RE to provide BFS with proof of minimum insurance coverage.

192.    Section 18.3 of the Baymont Franchise Agreement prohibited LuxUrban RE from issuing any press releases or making any other public-facing statements about any agreements between LuxUrban and BFS, without BFS's prior written consent, and also required LuxUrban RE to ensure that no misrepresentation is made regarding the relationship between the parties.

193.    Pursuant to section 11.1 of the Baymont Franchise Agreement, LuxUrban RE would be in default under the Baymont Franchise Agreement if it did not make payments due under the Baymont Franchise Agreement, and if the default was not cured within ten (10) days after LuxUrban RE received written notice from BFS, BFS could terminate the Baymont Franchise Agreement under section 11.2 of the Baymont Franchise Agreement.

194.    Pursuant to section 11.2 of the Baymont Franchise Agreement, BFS could terminate the Baymont Franchise Agreement, with notice to LuxUrban RE, for various reasons, including LuxUrban RE's: (a) failure to pay any amount due BFS under the Baymont Franchise Agreement, (b) failure to cure a default as provided in section 11.1, (c) failure to pay debts as they come due in the ordinary course of business, (d) commission of an act or failure to act, that in

44

BFS's reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Baymont Marks or System.

195.     Pursuant to sections 12.1 and 18.6.1 of the Baymont Franchise Agreement, LuxUrban RE agreed that, in the event of a termination of the Baymont Franchise Agreement pursuant to section 11.2, it would pay Liquidated Damages to BFS in accordance with a formula specified in the Baymont Franchise Agreement.

196.     Section 18.6.1 of the Baymont Franchise Agreement specifically set Liquidated Damages for the Baymont Facility at the greater of: (i) $2,000 for each guest room of the Baymont Facility LuxUrban RE was authorized to operate pursuant to Schedule B of this Agreement, prior to any room count reductions, or (ii) an amount equal to the average monthly Royalty Fee accrued at the Facility during the one (1) year period immediately preceding Termination multiplied by eighteen (18) (or the number of months remaining in the term, whichever is less).

197.     Pursuant to section 17.4 of the Baymont Franchise Agreement, LuxUrban RE agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Baymont Franchise] Agreement or collect amounts owed under this [Baymont Franchise] Agreement."

*ii.     The Guaranty of the Baymont Franchise Agreement*

198.     Effective as of the date of the Baymont Franchise Agreement, Ferdinand provided BFS with the Baymont Guaranty of LuxUrban RE's obligations under the Baymont Franchise Agreement.  A true copy of the Baymont Guaranty is attached hereto as <u>Exhibit 113</u>.

199.     Pursuant to the terms of the Baymont Guaranty, Ferdinand agreed, among other things, that upon a default under the Baymont Franchise Agreement, he would "immediately make

each payment and perform or cause [LuxUrban RE] to perform, each unpaid or unperformed obligation of [LuxUrban RE] under the [Baymont Franchise] Agreement."

200.    Pursuant to the terms of the Baymont Guaranty, Ferdinand agreed to pay the costs, including reasonable attorneys' fees, incurred by BFS in enforcing its rights or remedies under the Baymont Guaranty or the Baymont Franchise Agreement.

<div align="center"><em>iii.    The Baymont Development Incentive Note</em></div>

201.    In connection with entering into the Baymont Franchise Agreement and effective as of December 6, 2023, LuxUrban RE made, and Ferdinand co-made, a Development Incentive Note in the amount of $481,000.00 (the "Baymont Note").  A true copy of the Baymont Note is attached hereto as Exhibit 114.

202.    Pursuant to the terms of the Baymont Note, the principal sum of $481,000.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Baymont Note), in an amount equal to the principal amount of the Baymont Note divided equally by the number of complete Franchise Years remaining in the Baymont Franchise Agreement.

203.    Pursuant to Baymont Note, LuxUrban RE became subject to the obligation to repay or discharge the Baymont Notes upon receipt of any portion of the principal amount.

204.    BFS funded the Baymont Note.

205.    The Baymont Note provides that if a termination of the Baymont Franchise Agreement occurs for any reason, "the outstanding, unamortized principal balance of [the Baymont Note] shall be immediately due and payable without further notice, demand or presentment."

206.    Pursuant to the terms of the Baymont Note, if the Baymont Note is not paid within ten (10) days after it is due, the outstanding principal balance shall bear simple interest at a rate of

<div align="center">46</div>

the lesser of eighteen percent (18%) per annum or the highest rate allowed by applicable law from its due date until paid.

207.    The Baymont Note also provides that "[i]f this [Baymont] Note is collected by or through an attorney at law, [BFS] shall be entitled to collect reasonable attorneys' fees and costs of collection."

### Defendants' Defaults And The Termination Of The Hotel Agreements

208.    From the inception of the Hotel Agreements, LuxUrban, LuxUrban RE, and Corphousing consistently engaged in conduct that was in violation of the Hotel Agreements.

209.    LuxUrban, LuxUrban RE, and Corphousing failed to pay any Recurring Fees during their time operating the Trademark Hotels, Travelodge Facilities, and Baymont Facility. This was a curable default that LuxUrban, LuxUrban RE, and Corphousing failed to cure, as set forth in more detail below.

210.    In addition, LuxUrban, LuxUrban RE, and Corphousing engaged in conduct that caused harm to the good will associated with the Trademark Collection®, Travelodge®, and Baymont® brands.    LuxUrban's conduct has been the subject of multiple public lawsuits[29], evictions, and a litany of customer complaints, many of which are specifically related to LuxUrban,

---

[29] By way of example, LuxUrban was recently sued for violating federal securities laws because it misstated and/or failed to disclose to investors: (1) that the Company had not signed a lease with the Royalton Hotel; (2) that, as a result, LuxUrban's total reported units was overstated; (3) that LuxUrban faced multiple lawsuits for unpaid rent; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. *Pack v. LuxUrban Hotels Inc.*, 24 Civ. 1030 (PAE), (S.D.N.Y. Feb. 13, 2024).    Additionally, on or about March 18, 2024, LuxUrban, LuxUrban RE, and Corphousing agreed to a fine of $1.2 million resulting from an action by the City of New York against LuxUrban, LuxUrban RE, and Corphousing for operating short-term rentals.  Also, a federal district court recently entered default judgment against LuxUrban for approximately $120,000. See Brown v. LuxUrban Hotels, Inc., 2024 WL 761852, at *2-3 (E.D. Va. Feb. 23, 2024). Default judgment and a writ of garnishment was also entered against LuxUrban in at least one other case, see, e.g., 1238 Collins Ave. Corp. v. LuxUrban Hotels, Inc., Case No. 2024-002471-CA-01 (Fla. Cir. Ct.), and there are other pending actions against LuxUrban for failure to pay amounts owed under rental agreements and violations of lease provisions, see, e.g., Apple Eight Hospitality Ownership v. LuxUrban Re Holdings LLC, Index No. Unassigned (N.Y. Sup. Ct.). This list is a sampling of the myriad lawsuits where LuxUrban, LuxUrban RE, and Corp Housing have been, or currently are, a named defendant.

LuxUrban RE, and Corphousing improperly charging guests' credit cards and retaining guests' advance deposits long after a reservation was successfully cancelled. These goodwill defaults provided grounds for immediate termination of the Hotel Agreements.

211.    LuxUrban, LuxUrban RE, and Corphousing failed to obtain or maintain possession of some of the Trademark Hotels and Travelodge Facilities, and made public statements, without the approval of TMH or WHG, misrepresenting the relationship between LuxUrban, LuxUrban RE, or Corphousing and TMH or WHG[30]. These were also incurable defaults under the Hotel Agreements.

212.    On April 15, 2024, GRASSI & CO., CPAs, P.C., an independent registered accounting firm, opined that LuxUrban's significant accumulated operating losses and working capital deficit raise substantial doubt about its ability to continue as a going concern.[31]

### a.   The Trademark Collection® by Wyndham Hotels

213.    TMH and WHG have satisfied all of their obligations under the Trademark Membership Agreements, Trademark MITAs, and Trademark SRS Agreements, including, without limitation, providing LuxUrban, LuxUrban RE, and Corphousing the right to use the Trademark Collection® by Wyndham trade name, trademarks, and service marks.

### i.   The Astor Hotel

214.    By e-mail dated February 21, 2024, LuxUrban advised that it would no longer be operating the Astor Hotel effective February 26, 2024, thereby unilaterally terminating the Astor Hotel Agreement.

---

[30] For example, LuxUrban issued a press release on September 1, 2023, without the consent of TMH or WHG, which mischaracterized the development incentives under the Hotel Agreements.

[31] LuxUrban Hotels Inc. (2023). *Form 10-K*. https://investor.luxurbanhotels.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=17448466

16048774-1

215.   By letter dated March 29, 2024, a true copy of which is attached as <u>Exhibit 115</u>, TMH acknowledged LuxUrban's unilateral termination of the Astor Hotel Agreement effective February 26, 2024.  As a result of the termination, TMH further advised LuxUrban and Ferdinand that they were required to pay to TMH: (a) Liquidated Damages for premature termination as required under section 18.2.1 the Astor Hotel Agreement, (b) all outstanding Recurring Fees due under the Astor Hotel Agreement through the date of termination, and (c) the outstanding principal balance of the Astor Hotel Note.

<div align="center"><em>ii.     The 12th & Ocean Hotel</em></div>

216.   By e-mail dated March 23, 2024, LuxUrban advised that it would no longer be operating the 12th & Ocean Hotel effective March 29, 2024, thereby unilaterally terminating the 12th & Ocean Hotel Agreement.

217.   By letter dated March 29, 2024, a true copy of which is attached as <u>Exhibit 116</u>, TMH acknowledged LuxUrban's unilateral termination of the 12th & Ocean Hotel Agreement effective March 29, 2024.  As a result of the termination, TMH further advised LuxUrban and Ferdinand that they were required to pay to TMH: (a) Liquidated Damages for premature termination as required under section 18.2.1 of the 12th & Ocean Hotel Agreement, (b) all outstanding Recurring Fees due under the 12th & Ocean Hotel Agreement through the date of termination, and (c) the outstanding principal balance of the 12th & Ocean Hotel Note.

<div align="center"><em>iii.     The Hotel Impala and La Flora Hotel</em></div>

218.   On March 18, 2024, LuxUrban lost possession of the Hotel Impala and the La Flora Hotel, thereby unilaterally terminating the Hotel Impala Agreement and the La Flora Hotel Agreement.

<div align="center">49</div>

219.      By letters dated March 29, 2024, true copies of which are attached as <u>Exhibit 117</u>, TMH acknowledged LuxUrban's unilateral termination of the Hotel Impala Agreement and the La Flora Hotel Agreement effective March 18, 2024.  As a result of the terminations, TMH further advised LuxUrban and Ferdinand that they were required to pay to TMH: (a) Liquidated Damages for premature termination as required under section 18.2.1 of the Hotel Impala Agreement and the La Flora Hotel Agreement, (b) all outstanding Recurring Fees due under the Hotel Impala Agreement and La Flora Agreement through the date of terminations, and (c) the outstanding principal balance of the Hotel Impala Note and the La Flora Hotel Note.

<div align="center">

*iv.      The Bogart Hotel*

</div>

220.      By e-mail dated April 11, 2024, LuxUrban RE advised that it would no longer be operating the Bogart Hotel effective April 26, 2024, thereby unilaterally terminating the Bogart Hotel Agreement.

221.      By letter dated April 18, 2024, a true copy of which is attached as <u>Exhibit 118</u>, TMH acknowledged LuxUrban RE's unilateral termination of the Bogart Hotel Agreement effective April 26, 2024.  As a result of the termination, TMH further advised LuxUrban RE and Ferdinand that they were required to pay to TMH: (a) Liquidated Damages for premature termination as required under section 18.2.1 of the Bogart Hotel Agreement, (b) all outstanding Recurring Fees due under the Bogart Hotel Agreement through the date of termination, and (c) the outstanding principal balance of the Bogart Hotel Note.

<div align="center">

*v.      The James Hotel*

</div>

222.      LuxUrban RE failed to obtain possession of the James Hotel as required by the James Hotel Agreement.

<div align="center">

50

</div>

223.    By letter dated April 19, 2024, a true copy of which is attached as <u>Exhibit 119</u>, TMH terminated the James Hotel Agreement effective April 19, 2024 due to LuxUrban RE's: (a) failure to provide TMH with proof that LuxUrban RE owned or leased the James Hotel on or before March 8, 2024 as required by Schedule D of the James Hotel Agreement, (b) failure to maintain control of the James Hotel as required by the James Hotel Agreement, and (c) failure to complete all pre-opening items and renovations listed as "to be completed prior to opening" on the Property Improvement Plan by March 31, 2024 as required by section 18.8 of the James Hotel Agreement.  As a result of the termination, TMH further advised LuxUrban RE and Ferdinand that they were required to pay to TMH: (a) Liquidated Damages as required under section 12.1 of the James Hotel Agreement, and (b) the outstanding principal balance of the James Hotel Note.

vi.    *The Royalton Hotel*

224.    LuxUrban RE failed to obtain possession of the Royalton Hotel as required by the Royalton Hotel Agreement.

225.    By letter dated April 19, 2024, a true copy of which is attached as <u>Exhibit 120</u>, TMH terminated the Royalton Hotel Agreement effective April 19, 2024 due to LuxUrban RE's: (a) failure to provide TMH with proof that LuxUrban owned or leased The Royalton Hotel on or before January 28, 2024 as required by Schedule D of the James Hotel Agreement, (b) failure to maintain control of the Royalton Hotel as required by the James Hotel Agreement, and (c) failure to complete all pre-opening items and renovations listed as "to be completed prior to opening" on the Property Improvement Plan by December 31, 2023 as required by section 18.8 of the Royalton Hotel Agreement.  As a result of the termination, TMH further advised LuxUrban RE and Ferdinand that they were required to pay TMH Liquidated Damages as required under section 12.1 of the Royalton Hotel Agreement.

51

       *vii.*     *The Townhouse Hotel, O Hotel, Blakely, Condor Hotel, Washington, Georgetown Residence, Lafayette Hotel, Variety Hotel, Tuscany Hotel, Hotel 57*

226.    By letters dated April 19, 2024, true copies of which are attached hereto as <u>Exhibit 121</u>, TMH advised LuxUrban, LuxUrban RE, and Corphousing that: (a) they were in breach of the Townhouse Hotel Agreement, O Hotel Agreement, Blakely Agreement, Condor Hotel Agreement, Washington Agreement, Georgetown Residence Agreement, Lafayette Hotel Agreement, Variety Hotel Agreement, Tuscany Hotel Agreement, and Hotel 57 Agreement because they owed TMH outstanding Trademark Recurring Fees, (b) they had ten (10) days within which to cure these monetary defaults in accordance with section 11.1 of the Townhouse Hotel Agreement, O Hotel Agreement, Blakely Agreement, Condor Hotel Agreement, Washington Agreement, Georgetown Residence Agreement, Lafayette Hotel Agreement, Variety Hotel Agreement, Tuscany Hotel Agreement, and Hotel 57 Agreement, and (c) if the defaults were not cured, then the Townhouse Hotel Agreement, O Hotel Agreement, Blakely Agreement, Condor Hotel Agreement, Washington Agreement, Georgetown Residence Agreement, Lafayette Hotel Agreement, Variety Hotel Agreement, Tuscany Hotel Agreement, and Hotel 57 Agreement could be terminated.

227.    The April 19, 2024 letters also advised LuxUrban, LuxUrban RE, and Corphousing that they were in breach of the Townhouse Hotel Agreement, O Hotel Agreement, Blakely Agreement, Condor Hotel Agreement, Washington Agreement, Georgetown Residence Agreement, Lafayette Hotel Agreement, Variety Hotel Agreement, Tuscany Hotel Agreement, and Hotel 57 Agreement because: (a) they were causing harm to the good will and public image of the Trademark Collection® brand and System, (b) they failed to use an approved payment processing solution, (c) they failed to provide proof of minimum insurance coverage, (d) they made public

52

statements, without the approval of TMH or WHG, misrepresenting the relationship between LuxUrban, LuxUrban RE, or Corphousing and TMH or WHG, and (e) they failed to pay debts as they became due in the ordinary course of business.

228.    By letters dated April 30, 2024, true copies of which are attached as <u>Exhibit 122</u>, TMH terminated the Townhouse Hotel Agreement, O Hotel Agreement, Blakely Agreement, Condor Hotel Agreement, Washington Agreement, Georgetown Residence Agreement Lafayette Hotel Agreement, Variety Hotel Agreement, Tuscany Hotel Agreement, and Hotel 57 Agreement effective April 30, 2024 due to LuxUrban, LuxUrban RE, and Corphousing's multiple, material, and independent breaches of the Townhouse Hotel Agreement, O Hotel Agreement, Blakely Agreement, Condor Hotel Agreement, Washington Agreement, Georgetown Residence Agreement, Lafayette Hotel Agreement, Variety Hotel Agreement, Tuscany Hotel Agreement, and Hotel 57 Agreement.  As a result of the termination, TMH further advised LuxUrban, LuxUrban RE, Corphousing, and Ferdinand that they were required to pay to TMH: (a) Liquidated Damages as required under section 18.2.1 of the Trademark Membership Agreements, (b) all outstanding Trademark Recurring Fees through the date of termination, and (c) the outstanding principal balance of the Trademark Notes.

b.    *The Travelodge Facilities*

229.    THI and WHG have satisfied all of their obligations under the Travelodge Franchise Agreements, Travelodge MITAs, and Travelodge SRS Agreements, including, without limitation, providing LuxUrban and Corphousing the right to use the Travelodge® trade name, trademarks, and service marks.

i.    *The Hotel 46 Facility*

53

230.   LuxUrban RE failed to obtain possession of the Hotel 46 as required by the Hotel 46 Agreement.

231.   By letter dated April 19, 2024, a true copy of which is attached hereto as <u>Exhibit 123</u>, THI terminated the Hotel 46 Agreement effective April 19, 2024 due to LuxUrban RE's: (a) failure to provide THI with proof that LuxUrban RE owned or leased Hotel 46 on or before January 21, 2024, (b) failure to maintain control of Hotel 46 as required by the Hotel 46 Agreement, (c) failure to complete all pre-opening items and renovations listed as "to be completed prior to opening" on the Property Improvement Plan by January 31, 2024, as required by section 18.6 of the Hotel 46 Agreement, and (d) breach of section 18.6 of the Hotel 46 Agreement which required the termination of the Commercial Housing Agreement with the City of New York by no later than January 31, 2024.  As a result of the termination, THI further advised LuxUrban RE and Ferdinand that they were required to pay to THI: (a) Liquidated Damages as required under section 12.1 of the Hotel 46 Agreement and (b) the outstanding principal balance of the Hotel 46 Note.

<div align="center"><em>ii.     The BeHome Facility</em></div>

232.   By letter dated April 19, 2024, a true copy of which is attached hereto as <u>Exhibit 124</u>, THI advised Corphousing that: (a) it was in breach of the BeHome Agreement because it owed THI outstanding Travelodge Recurring Fees, (b) it had ten (10) days within which to cure this monetary default in accordance with section 11.1 of the BeHome Agreement, and (c) if the default was not cured, then the BeHome Agreement might be subject to termination.

233.   The April 19, 2024 letter also advised Corphousing that it was in breach of the BeHome Agreement because: (a) it was causing harm to the good will and public image of the Travelodge® brand and System, (b) it failed to use an approved payment processing solution, (c) it failed to provide proof of minimum insurance coverage, (d) it made public statements, without

<div align="center">54</div>

16048774-1

the approval of THI, misrepresenting the relationship between Corphousing and THI or WHG, and (e) it failed to pay debts as they became due in the ordinary course of business.

234.    By letter dated April 30, 2024, a true copy of which is attached as <u>Exhibit 125</u>, THI terminated the BeHome Agreement effective April 30, 2024, due to Corphousing's multiple material, independent breaches of the BeHome Agreement. As a result of the termination, THI further advised Corphousing and Ferdinand that they were required to pay to THI: (a) Liquidated Damages in the as required under section 18.2.1 of the BeHome Agreement, (b) all outstanding Travelodge Recurring Fees due under the BeHome Agreement through the date of termination, and (c) the outstanding balance of the Travelodge Note.

*b.    The Baymont® Facility*

235.    BFS and WHG have satisfied all of their obligations under the Baymont Franchise Agreement, Baymont MITA, and Baymont SRS Agreement, including, without limitation, providing LuxUrban RE the right to use the Baymont® trade name, trademarks, and service marks.

236.    By letter dated April 19, 2024, a true copy of which is attached hereto as <u>Exhibit 126</u>, BFS  advised LuxUrban RE that: (a) it was in breach of the Baymont Franchise Agreement because it owed outstanding Baymont Recurring Fees, (b) it had ten (10) days within which to cure this monetary default in accordance with section 11.1 of the Baymont Franchise Agreement, and (c) if the default was not cured, then the Baymont Franchise Agreement might be subject to termination.

237.    The April 19, 2024 letter also advised LuxUrban RE that it was in breach of the Baymont Franchise Agreement because: (a) it was causing harm to the good will and public image of the Baymont® brand and System, (b) it failed to use an approved payment processing solution, (c) it failed to provide proof of minimum insurance coverage, (d) it made public statements,

without the approval of BFS or WHG, misrepresenting the relationship between LuxUrban RE and BFS or WHG, and (e) it failed to pay debts as they became due in the ordinary course of business.

238.    By letter dated April 30, 2024, a true copy of which is attached as <u>Exhibit 127</u>, BFS terminated the Baymont Franchise Agreement effective April 30, 2024, due to LuxUrban RE's multiple, material, and independent breaches of the Baymont Franchise Agreement. As a result of the termination, BFS further advised LuxUrban RE and Ferdinand that they were required to pay to BFS: (a) Liquidated Damages as required under section 18.6.1 of the Baymont Franchise Agreement, (b) all outstanding Baymont Recurring Fees through the date of termination, and (c) the outstanding principal balance of the Baymont Note.

## <u>FIRST COUNT</u>

239.    Plaintiffs repeat and make a part hereof each and every allegation contained in paragraphs 1 through 238 of the Complaint.

240.    Pursuant to sections 3.6 and 4.8 of the Hotel Agreements, LuxUrban, LuxUrban RE, and Corphousing agreed to allow Plaintiffs to examine, audit, and make copies of LuxUrban, LuxUrban RE, and Corphousing's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Trademark Hotels, Travelodge Facilities, and Baymont Facility.

241.    The calculation of the monetary amounts sought by Plaintiffs in this action is based on the gross room revenue information supplied to Plaintiffs by LuxUrban, LuxUrban RE, and Corphousing and, to the extent there has been non-reporting, Plaintiffs' estimate as to the gross room revenue earned by LuxUrban, LuxUrban RE, and Corphousing.

242.     The accuracy of Plaintiffs' estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, statements and books, and other financial materials from LuxUrban, LuxUrban RE, and Corphousing.

**WHEREFORE**, Plaintiffs demand judgment ordering that LuxUrban, LuxUrban RE, and Corphousing account to Plaintiffs for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Trademark Hotels, Travelodge Facilities, and Baymont Facility from the inception of the Hotel Agreements through the termination date of the Hotel Agreements.

## SECOND COUNT

243.     Plaintiffs repeat and make a part hereof each and every allegation contained in paragraphs 1 through 242 of the Complaint.

244.     Between February 26, 2024 and April 30, 2024, Plaintiffs terminated, or acknowledged the termination of, all twenty-one (21) of the Hotel Agreements with LuxUrban, LuxUrban RE, and Corphousing, due to, among other things, LuxUrban, LuxUrban RE, and Corphousing's failure to cure their monetary defaults under the Hotel Agreements, failure to pay debts as they became due in the ordinary course of business, violations of the good will and publicity provisions of the Hotel Agreements, and/or failure to obtain or maintain possession of some of the Trademark Hotels and Travelodge Facilities.

245.     Sections 12.1 and 18.2.1 of the Hotel Agreements provide that, in the event of termination of the Hotel Agreements due to the actions of LuxUrban, LuxUrban RE, and Corphousing, they shall pay Liquidated Damages to Plaintiffs within ten (10) days of termination.

246.     As a result of the premature termination of the Hotel Agreements, LuxUrban, LuxUrban RE, and Corphousing are obligated to pay to Plaintiffs Liquidated Damages in the

amount of $6,065,654.75[32], as calculated pursuant to sections 12.1 and 18.2.1 of the Hotel Agreements.

247.    Notwithstanding Plaintiffs' demand for payment, LuxUrban, LuxUrban RE, and Corphousing have failed to pay the Liquidated Damages as required in sections 12.1 and 18.2.1 of the Hotel Agreements.

248.    Plaintiffs have been damaged by LuxUrban, LuxUrban RE, and Corphousing's failure to pay Liquidated Damages.

**WHEREFORE**, Plaintiffs demand judgment against LuxUrban, LuxUrban RE, and Corphousing for Liquidated Damages in the amount of $6,065,654.75, together with interest, attorneys' fees, and costs of suit.

## THIRD COUNT

249.    Plaintiffs repeat and make a part hereof each and every allegation contained in paragraphs 1 through 248 of the Complaint.

250.    By virtue of the premature termination of the Hotel Agreements, Plaintiffs sustained a loss of future revenue over the remainder of the terms of the Hotel Agreements.

251.    If the Court determines that LuxUrban, LuxUrban RE, and Corphousing are not liable to pay Plaintiffs Liquidated Damages as required by sections 12.1 and 18.2 of the Hotel Agreements then, in the alternative, LuxUrban, LuxUrban RE, and Corphousing are liable to Plaintiffs for actual damages for the premature termination of the Hotel Agreements.

252.    Plaintiffs have been damaged by LuxUrban, LuxUrban RE, and Corphousing's breach of their obligation to operate the Trademark Hotels, Travelodge Facilities, and Baymont Facility for the remaining terms of the Hotel Agreements.

---

[32] The Liquidated Damages owed by LuxUrban, LuxUrban RE, and Corphousing are set forth in detail, and broken down by site and defendant entity, on the spreadsheet attached hereto as Exhibit 128.

16048774-1

**WHEREFORE**, Plaintiffs demand judgment against LuxUrban, LuxUrban RE, and Corphousing for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

253.    Plaintiffs repeat and make a part hereof each and every allegation contained in paragraphs 1 through 252 of the Complaint.

254.    Pursuant to the Hotel Agreements, the SRS Agreements[33], and the MITAs[34], LuxUrban, LuxUrban RE, and Corphousing were obligated to remit Trademark Recurring Fees, Travelodge Recurring Fees, and Baymont Recurring Fees (collectively "Recurring Fees") to the respective Plaintiffs.

255.    Despite their obligation to do so, LuxUrban, LuxUrban RE, and Corphousing failed to remit certain of the Recurring Fees due and owing under the Hotel Agreements, SRS Agreements, and MITAs, in the current amount of $1,837,566.47[35].

256.    LuxUrban, LuxUrban RE, and Corphousing's failure to remit the agreed Recurring Fees constitutes a breach of the Hotel Agreements and has damaged Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against LuxUrban, LuxUrban RE, and Corphousing for the outstanding Recurring Fees due and owing under the Hotel Agreements, SRS Agreements, and MITAs in the current amount of $1,837,566.47, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

---

[33] "SRS Agreements" refers collectively to the Trademark SRS Agreements, Travelodge SRS Agreements, and Baymont SRS Agreement.
[34] "MITAs" refers collectively to the Trademark MITAs, Travelodge MITAs, and Baymont MITA.
[35] The outstanding Recurring Fees owed by LuxUrban, LuxUrban RE, and Corphousing at the time of termination are set forth in detail, and broken down by site and defendant entity, on the spreadsheet attached hereto as <u>Exhibit 128</u>.

59

257.   Plaintiffs repeat and make a part hereof each and every allegation contained in paragraphs 1 through 256 of the Complaint.

258.   Throughout the course of their relationship with Plaintiffs, LuxUrban, LuxUrban RE, and Corphousing benefited from Plaintiffs' provision of services, money, goodwill, trade names, trademarks, and/or service marks at Plaintiffs' expense.

259.   LuxUrban, LuxUrban RE, and Corphousing utilized the services, money, goodwill, trade names, trademarks, and/or service marks provided by Plaintiffs without paying for those benefits.

260.   LuxUrban, LuxUrban RE, and Corphousing's failure to compensate Plaintiffs constitutes unjust enrichment and has damaged Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against LuxUrban, LuxUrban RE, and Corphousing for outstanding Recurring Fees due and owing under the Hotel Agreements, SRS Agreements, and MITAs in the current amount of $1,837,566.47, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

261.   Plaintiffs repeat and make a part hereof each and every allegation contained in paragraphs 1 through 260 of the Complaint.

262.   Pursuant to the terms of the Trademark Guaranties, Travelodge Guaranties, and Baymont Guaranty (collectively "Hotel Guaranties"), Ferdinand agreed, among other things, that upon a default under the Hotel Agreements, SRS Agreements, and MITAs, he would immediately make each payment and perform each obligation required of LuxUrban, LuxUrban RE, and Corphousing under the Hotel Agreements, SRS Agreements, and MITAs.

263.     Despite his obligation to do so, Ferdinand has failed to make any payments or perform or cause LuxUrban, LuxUrban RE, and Corphousing to perform each obligation required under the Hotel Agreements, SRS Agreements, and MITAs.

264.     Pursuant to the Hotel Guaranties, Ferdinand is liable to Plaintiffs for LuxUrban, LuxUrban RE, and Corphousing's outstanding Liquidated Damages in the amount of $6,065,654.75, or actual damages in an amount to be determined at trial, and LuxUrban, LuxUrban RE, and Corphousing's outstanding Recurring Fees due and owing under the Hotel Agreements, SRS Agreements, and MITAs in the current amount of $1,837,566.47.

**WHEREFORE**, Plaintiffs demand judgment against Ferdinand for damages in the amount of all Liquidated Damages, or actual damages, and outstanding Recurring Fees due and owing under the Hotel Agreements, SRS Agreements, and MITAs, together with interest, attorneys' fees, and costs of suit.

## SEVENTH COUNT

265.     Plaintiffs repeat and make a part hereof each and every allegation contained in paragraphs 1 through 264 of the Complaint.

266.     Effective as of the date of the Hotel Agreements, LuxUrban, LuxUrban RE, and Corphousing made, and Ferdinand co-made, the Trademark Notes, Travelodge Notes, and Baymont Note (collectively "Hotel Notes") issued by Plaintiffs.

267.     Pursuant to the terms of the Hotel Notes, the principal sum of $10,427,250.00 would be forgiven without payment on each anniversary of the Final Funding Date (as defined in the Hotel Notes), in an amount equal to the principal amount of the respective Hotel Notes divided equally by the number of complete years remaining in the terms of the respective Hotel Agreements.

61

268.    The Hotel Notes provide that if a termination of the Hotel Agreements occurs for any reason, "the outstanding, unamortized principal balance of [the Hotel Notes] shall be immediately due and payable without further notice, demand or presentment."

269.    Between February 26, 2024 and April 30, 2024, Plaintiffs terminated, or acknowledged the termination of, all twenty-one (21) of the Hotel Agreements with LuxUrban, LuxUrban RE, and Corphousing, due to, among other things, LuxUrban, LuxUrban RE, and Corphousing's failure to cure their monetary defaults under the Hotel Agreements, failure to pay debts as they became due in the ordinary course of business, violations of the good will and publicity provisions of the Hotel Agreements, and failure to obtain or maintain possession of some of the Trademark Hotels and Travelodge Facilities.

270.    As a result of the termination of the Hotel Agreements, the outstanding principal balance of the Hotel Notes amounted to $10,427,250.00[36].

271.    Despite their obligation to do so, LuxUrban, LuxUrban RE, Corphousing, and Ferdinand have failed to make the payment due and owing to Plaintiffs under the Hotel Notes.

272.    LuxUrban, LuxUrban RE, Corphousing, and Ferdinand's failure to make the agreed payment on the Hotel Notes constitutes breach of the Hotel Notes and has damaged Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against LuxUrban, LuxUrban RE, Corphousing, and Ferdinand for damages in the principal sum of $10,427,250.00 due and owing under the Hotel Notes, together with interest, attorneys' fees, and costs of suit.

---

[36] The outstanding principal balance of the Hotel Notes owed by LuxUrban, LuxUrban RE, Corphousing, and Ferdinand at the time of termination are set forth in detail, and broken down by site and defendant entity, on the spreadsheet attached hereto as Exhibit 128.

62

16048774-1

**Connell Foley LLP**
Attorneys for Plaintiffs,
Wyndham Hotel Group, LLC, TMH Worldwide, LLC, Travelodge Hotels, Inc., and Baymont Franchise Systems, Inc.

By: _____
    Bryan P. Couch

Dated:  November 14, 2024

16048774-1

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the Rules of Court, Plaintiffs hereby designate Bryan P. Couch and

Connell Foley LLP as trial counsel in this matter.

**Connell Foley LLP**
Attorneys for Plaintiffs,
Wyndham Hotel Group, LLC, TMH Worldwide,
LLC, Travelodge Hotels, Inc., and Baymont
Franchise Systems, Inc.

By: _____
　　　　Bryan P. Couch

Dated:　November 14, 2024

16048774-1

<u>**CERTIFICATION PURSUANT TO RULE 4:5-1(2)**</u>

It is hereby certified that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of my knowledge and belief.  It is also my understanding and belief that no other action or arbitration proceeding is contemplated.  At this time, I know of no other parties that should be joined in the above action.  I recognize the continuing obligation of each party to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

**Connell Foley LLP**
Attorneys for Plaintiffs,
Wyndham Hotel Group, LLC, TMH Worldwide, LLC, Travelodge Hotels, Inc., and Baymont Franchise Systems, Inc.

By: _____
          Bryan P. Couch

Dated:  November 14, 2024

16048774-1