**Hearing Date and Time: October 21, 2025, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Date and Time: October 17, 2025, at 12:00 p.m. (prevailing Eastern Time)**

Robert L. LeHane
David I. Zalman
Randall L. Morrison, Jr.
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
Email: rlehane@kelleydrye.com
　　　　dzalman@kelleydrye.com
　　　　rmorrison@kelleydrye.com

*Counsel to Aareal Capital Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LUXURBAN HOTELS INC., *et al.*,<br><br>　　　　　　　　　　Debtors. [1] | Chapter 11<br><br>Case Number: 25-12000 (DSJ)<br><br>(Jointly Administered) |

**AAREAL CAPITAL CORPORATION'S (I) LIMITED JOINDER TO THE**
**MOTION OF THE OFFICE OF THE UNITED STATES TRUSTEE FOR**
**THE APPOINTMENT OF A CHAPTER 11 TRUSTEE, AND (II)**
**CROSS-MOTION TO DISMISS OR CONVERT CASE UNDER 11 U.S.C. § 1112(b)**

　　　　Aareal Capital Corporation ("Aareal"), by and through its undersigned counsel, respectfully submits this limited joinder (the "Limited Joinder") to *the United States Trustee's Motion, Pursuant to 11 U.S.C. § 1104, for an Order Directing the Appointment of a Chapter 11*

---

[1] The "Debtors" in these chapter 11 cases and the last four digits of each of Debtor's taxpayer identification number are as follows: LuxUrban Hotels Inc. (4945); and LuxUrban RE Holdings LLC (2907).

*Trustee* (the "Trustee Motion")[2] and cross-motion to dismiss or convert the case under 11 U.S.C. § 1112(b) to a case under chapter 7 of the Bankruptcy Code (the "Cross-Motion").

## PRELIMINARY STATEMENT

1. Aareal agrees with the premise of the Trustee Motion: the status quo is unsustainable, and Debtors cannot be allowed to remain in possession. At a minimum, Aareal supports the appointment of a Chapter 11 Trustee. However, it is abundantly clear that Debtors have no viable path to rehabilitation and the appointment of a Chapter 11 Trustee will add unnecessary administrative costs to a case where Debtors appear to be hopelessly administratively insolvent and lack any realistic prospect for reorganization.

2. Debtors' only "assets" consist of three leases, all of which are in default due to unpaid rent and it appears highly unlikely that the leases are assumable. Meanwhile, serious issues continue to arise at Debtors' hotel properties. At the Herald, which is located in the building that secures Aareal's loan, Debtors have not operated for weeks, and there are mounting safety issues, persistent leaks, accumulating garbage, and other pressing security concerns impacting the other tenants, their customers, and public safety in general. Debtors have made no assurances or otherwise demonstrated that they can rectify those serious issues. At Hotel 46, the lender already obtained stay relief permitting the entry of a judgment of foreclosure and sale that will lead to the loss of Debtors' leasehold interest. At the Tuscany property, the landlord acknowledged that the prime lease has expired and an unknown third party appears to have taken possession and is operating an illegal hotel business without its consent and effectively displacing Debtors. In short, the picture is grim for Debtors.

---

[2]   Docket No. 70.

2

3. Debtors have no meaningful assets, significant and unresolvable liabilities, and no viable path forward. Since the petition date, Debtors have raised the possibility of obtaining DIP financing to restart operations but have presented no proposals in the month since. Debtors' assertions regarding the possibility of DIP financing are speculative, at best. Under these circumstances there is no basis for the cases to proceed in chapter 11, and they should either be dismissed or converted to a chapter 7 liquidation.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein are sections 1112(b) and 105 of the Bankruptcy Code.[3] Debtors remain in possession and no trustee or official committee of creditors has been appointed.

## FACTUAL BACKGROUND[4]

5. On September 14, 2025 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[5] On September 16, 2025, the Court directed that the cases be jointly administered for procedural purposes under Case No. 25-12000 (DSJ).[6]

**A.    Debtors' Operations**

6. Debtors lease entire existing hotels on a long-term basis and rent out hotel rooms in those properties.[7] Prior to the Petition Date, Debtors' portfolio consisted of four hotels in

---

[3] Fed. R. Bankr. P. 1017.

[4] To the extent not addressed herein, Aareal incorporates the facts set forth the Trustee Motion, Docket No. 70.

[5] Docket No. 1.

[6] Docket No. 4.

[7] Docket No. 1 at ¶ 7.

3

Manhattan with long-term lease agreements: (i) the Herald, located at 71 West 35th Street; (ii) the Tuscany, located at 120 East 39th Street; (iii) Hotel 27, located at 21 East 27th Street; and (iv) Hotel 46, located at 129 West 46th Street.[8]

7.    Debtors' counsel stated at the first day hearing on September 30, 2025, that Debtors have only about $50,000 in the bank.[9] According to the First Day Declaration, Debtors have $14.9 million of secured debt, $5.2 million in merchant cash advances, and $7.8 million due to vendors and other unsecured creditors.[10] The State of New York has filed a claim asserting that Debtors owe nearly $120 million in unpaid sales tax over the past five years.[11] The Wyndham Hotel Group has filed suit against the Debtors for tens of millions of dollars.[12] Many other significant claims have been filed as well. In contrast to $50,000 in cash, Debtors have hundreds of millions of dollars in liabilities, including large liabilities to the Union (as defined below) that must be paid before Debtors could theoretically operate a hotel at one of their properties.

      **B.**    **Aareal Commences a Foreclosure Action Against Landlord**

8.    Aareal is the secured lender to 960 Associates LLC ("Landlord"), owner of the building located at 71 West 35th Street a/k/a 960 Sixth Avenue, New York, New York 10001 (the "Property") where the Herald is located. In July 2018, Aareal made a $60 million loan to Landlord.[13] The Loan matured on August 15, 2025, without being repaid in full,[14] and, on August

---

[8]    *Id.*

[9]    First Day Hearing Transcript at 23.

[10]    First Day Declaration at ¶ 14.

[11]    Proof of Claim Docket No. 4.

[12]    Docket No. 73 at ¶ 46.

[13]    Declaration of Robert L. LeHane in Support of (I) Limited Joinder of Aareal Capital Corporation to Motion of the Office of the United States Trustee for the Appointment of a Chapter 11 Trustee, and (II) Cross-Motion to Dismiss or Convert Case Under 11 U.S.C. § 1112(b) (the "LeHane Declaration"), ¶ 3, Ex. 1.

[14]    LeHane Declaration, Ex. 1.

4

25, 2025, Aareal commenced a commercial foreclosure action against Landlord in New York County Supreme Court captioned *Aareal Capital Corporation v. 960 Associates LLC, et al.*, Index No. 805379/2025 (the "Foreclosure Action").[15]  Debtor LuxUrban Hotels Inc. is a defendant in the Foreclosure Action to extinguish its possessory right and right of redemption under New York law.  On August 25, 2025, Lender filed a motion in the Foreclosure Action to appoint a receiver over the Property that is Aareal's collateral and owned by the non-debtor Landlord.[16]  On September 9, 2025, the New York State Court granted Aareal's application, directing the parties to meet and confer regarding any revisions to the proposed order.[17]  Prior to the New York State Court entering the receiver order, LuxUrban declared bankruptcy.

9.      Aareal requested by letter motion and at the status conference on September 30, 2025, that the Court enter a so-ordered stipulation with Debtors lifting the automatic stay, to the extent necessary, to allow the New York State Court to enter the receiver order.[18]  The United States Trustee expressed concern about the language of the stipulation and the proposed receiver order.  Unfortunately, the ongoing government shutdown has prevented the parties from reaching agreement on the stipulation and receiver order.  As a result, there is no receiver in place and conditions at the property continue to deteriorate.

---

[15]    *Id.*

[16]    LeHane Declaration, ¶ 3.

[17]    LeHane Declaration, ¶ 3, Ex. 2.

[18]    Docket No. 53.

### C. The Herald Sits Vacant

10. The Herald has been shuttered since at least September 23, 2025, when a sign was posted to the entrance of the hotel stating that: "ALL RESERVATIONS HAVE BEEN CANCELLED. Currently, there is no one in the building to assist!"[19]

11. Debtors' failure to operate has caused and continues to cause significant damage to the Property.[20] Among other things, over the course of the last three weeks, unknown individuals forced open the entry door to the hotel causing a safety hazard, there are ongoing leaks in the building and there are piles of trash in rooms and hallways that have been left festering.[21] This situation is untenable and cannot be permitted to continue.

12. Debtors have not paid rent to Landlord since December 2024 and prior to the Petition Date, Landlord had obtained a judgment of possession and a notice of eviction against LuxUrban in landlord-tenant court.[22] Aareal understands that Debtors have not paid use and occupancy to Landlord post-Petition Date, and Aareal intends to file a motion demanding that Debtors either assume the lease (and cure the significant unpaid rent or reject the lease and vacate the Property, or, in the alternative, lifting the automatic stay to allow Landlord or the receiver (if and when appointed) to enter the Property and secure it).

### D. The Remaining Hotel Properties

13. Of Debtors' remaining hotel properties, Debtors have essentially lost economic and possessory interests in two of them, The Tuscany and Hotel 46. These properties are no longer viable assets of Debtors' estates.

---

[19] LeHane Declaration, ¶ 5, Ex. 3.

[20] LeHane Declaration, ¶ 6.

[21] *Id.*

[22] LeHane Declaration ¶ 7, Ex. 4.

14. **The Tuscany**: St. Giles, the owner and landlord of the property located at 120 East 39th Street, New York, NY (previously operated by Debtors as "The Tuscany"), filed a Motion for Relief from the Automatic Stay on October 6, 2025, seeking leave to prosecute a holdover proceeding.[23] On October 9, 2025, St. Giles also filed a joinder to the Trustee Motion.[24] As detailed in its stay relief motion, Debtors were subtenants at the Tuscany without a valid primary lease.[25] Debtors appear to have abandoned the property entirely, and the prime tenant has reportedly installed an unknown third party to operate the hotel, likely in violation of the automatic stay.[26] St. Giles has raised serious concerns that delegating control of security and maintenance obligations to an unauthorized third party poses significant risks to both the property and public safety.[27] Given these circumstances, Debtors no longer maintain any valid economic or possessory interest in the Tuscany, and, in fact, have consented to St. Giles' Motion for Relief from the Automatic Stay.[28]

15. **Hotel 46**: On September 18, 2025, W Financial REIT, Ltd. ("W Financial") filed a motion for relief from the automatic stay to proceed with a foreclosure action entitled *W Financial REIT, Ltd. v. Key Hotels, LLC, et al.*, pending in New York State Court, concerning the property located at 129 West 46th Street, New York, NY known as "Hotel 46".[29] On October 9, 2025, the Court granted that motion, allowing the foreclosure to proceed.[30] As reflected in the motion and

---

[23]   Docket No. 58.
[24]   Docket No. 72.
[25]   Docket No. 58 at ¶¶ 9-12.
[26]   *Id.* at ¶¶ 17-18.
[27]   *Id.* at ¶ 19.
[28]   Docket No. 83.
[29]   Docket No. 7.
[30]   Docket No. 68.

arguments at the hearing, the foreclosure will extinguish Debtors' leasehold interests in the property.[31] Debtors defaulted in the foreclosure action, and a judgment of foreclosure and sale has already been signed and is currently awaiting entry by the New York County Clerk.[32] It is therefore a near-certainty that Debtors' lease will be terminated imminently. The only conceivable path for Debtors to operate at Hotel 46 would be to negotiate an entirely new lease with the future owner following the foreclosure sale—an outcome that seems remote given Debtors' operational history and financial condition.

### E.    Debtors' Myriad Other Economic Issues

16.    The Wyndham Hotel Group's joinder to the Trustee Motion details Debtors' numerous defaults under their hotel franchise agreements.[33] Wyndham asserts that these breaches have resulted in damages totaling tens of millions of dollars.[34] In addition, the Hotel & Gaming Trades Council, AFL-CIO (the "Union"), also joined the Trustee Motion.[35] In a letter to the Court, the Union reported that union employees were not paid for at least five weeks prior to the Petition Date and that Debtors are unlawfully withholding approximately $57,000 in employee 401(k) contributions.[36] Aareal also understands that Debtors' unpaid obligations owed to the Union may total in the millions. Other creditors and stakeholders have likewise filed significant claims and raised serious concerns regarding Debtors' mismanagement and the continued viability of the business.

---

[31]    Docket No. 7 at ¶¶ 17-19.

[32]    *Id.* at ¶ 10.

[33]    Docket No. 73.

[34]    *Id.* at ¶ 7.

[35]    Docket No. 74.

[36]    Docket No. 10 at ¶ 1.

**LIMITED JOINDER**

17. Aareal joins in the United States Trustee's Motion and incorporates herein and adopts the United States Trustee's recitation of facts and arguments in support thereof.

18. However, Aareal believes additional cause exists to dismiss or convert this case into a chapter 7 liquidation pursuant to Bankruptcy Code § 1112(b) and that either outcome better serves stakeholders here than the appointment of a chapter 11 trustee that will only add unnecessary administrative costs to a case that is already hopelessly administratively insolvent.

**LEGAL ARGUMENT**

**I.    Conversion Or Dismissal Is Warranted Pursuant to 11 U.S.C. § 1112(b)**

19. Section 1112(b) of the Bankruptcy Code provides that

"(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

20. Section 1112(b)(4) enumerates 16 potential causes to convert or dismiss the case. In the present circumstance, cause exists under subsection (A) and (B):

(A)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B)    gross mismanagement of the estate.

21. "Cause" to convert or dismiss, however, is not limited to the expressly enumerated provisions of the statute. *See In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (stating that the sixteen examples of events that may constitute cause in §1112(b)(4) are "'not exhaustive' and courts are free to consider other factors"). The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case. *In re The 1031 Tax Group, LLC*, 347 B.R. 78, 93 (Bankr. S.D.N.Y. 2007).

9

### i. Continuing Loss to the Estate

22. Cause for conversion or dismissal exists when a moving party can demonstrate the substantial or continuing loss to or diminution of the debtor's estate and an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. §1112(b)(4)(A); *In re 1031 Tax Grp., LLC*, 374 B.R. at 93. An estate's liability for administrative expenses constitutes a diminution in assets. *In re Lyons Transportation Lines, Inc.*, 123 B.R. 526, 531 (Bankr.W.D.Pa. 1991); *see also In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009) (noting that the debtor continues to incur quarterly U.S. Trustee fees as well as legal fees, causing a continuing loss to the estate). "To determine whether there is a continuing loss or a diminution of the estate, a court must make a full evaluation of the present condition of the estate, not merely look at a debtor's financial statements." *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003).

23. The Court has already acknowledged its concern "that the estate may be suffering rapidly escalating harm to the detriment of creditors...."[37] Its concern is well-founded. A full evaluation of the condition of Debtors' estate shows that Debtors currently have no meaningful assets, no revenue, and, as of a month ago, only approximately $50,000 in cash. Despite this, they continue to accrue post-petition rent and administrative fees under their leases that have not been paid. They are also incurring ongoing liabilities to tax authorities and the Union, and they remain in breach of their obligations to landlords by failing to maintain the hotel properties, which are visibly and rapidly deteriorating. Based on reports from other tenants at the Property, including the operator of a rooftop lounge that shares an elevator bank with LuxUrban, conditions at the Herald are bleak. There are active water leaks, trash accumulating in hallways for extended periods, and other serious maintenance failures impacting the tenants and their customers. These

---

[37] Docket No. 79 at 1.

facts demonstrate a continued and accelerating loss to the estate, with no revenue or assets to counterbalance the growing liabilities.

### ii. There is No Likelihood of Rehabilitation

24. Section 1112(b)(4)(A) is "intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995); *see also In re Court Living Corp.*, No. 96 CIV. 965, JSM, 1996 WL 527333, at *3 (S.D.N.Y. Sept. 16, 1996). The term "rehabilitation" is not synonymous with the term "reorganization," which, for purposes of chapter 11 generally, may include a liquidation. *See In re AdBrite Corp.*, 290 B.R. at 216. Rather, the term "rehabilitate" means "to put back in good condition; re-establish on a firm, sound basis." *In re Lizeric*, 188 B.R. at 503 (*quoting* 5 Collier on Bankruptcy ¶ 1112.03 at 1112-19 (Lawrence P. King et al. eds., 15th ed. 1995)) (internal quotation marks omitted).

25. Here, there is no reasonable likelihood of rehabilitation and Debtors have presented no evidence indicating an ability to rehabilitate their business. When this case was filed, Debtors' assets consisted of four leases and the revenue generated by the hotels operating at the leased properties. Conditions have only worsened since then with Debtors' assets dwindling. All of Debtors' leases are in default. Debtors no longer have a valid lease or possessory interest in the Tuscany property, are on the verge of losing their lease at Hotel 46 through foreclosure, and Aareal intends to move promptly to compel rejection of the lease for the Herald. While Debtors have claimed they intend to secure DIP financing to restart operations, they have demonstrated no progress or ability to secure such funding. The record in this case makes clear that reorganization is not feasible. This case is on an unavoidable path to liquidation, and proceeding with that outcome now—before incurring the additional administrative costs of a Chapter 11 Trustee—would better preserve what little remains of the estate.

11

### iii. Debtors Have Grossly Mismanaged the Estate

26. In addition to the diminution of the estate, and no likelihood of rehabilitation, Debtors have grossly mismanaged the estate. Section 1112(b)(4)(B) "focuses on the conduct of the estate's affairs, not the pre-petition debtor's, and requires that the mismanagement be gross in character, meaning that it is 'glaringly noticeable usually because of inexcusable badness or objectionableness. . . . Given the plain language, a debtor's mismanagement must be beyond all reasonable measure.'"). *In re Stream TV Networks, Inc.*, No. BR 23-10763 (MDC), 2024 WL 87639, *15 (Bankr. E.D. Pa. Jan. 5, 2024) (finding gross mismanagement when debtor engaged in gamesmanship, conflicted interests and lack of candor) (internal marks and citations omitted).

27. Debtors have taken no meaningful steps to advance this case or preserve the estate's assets. They have not filed schedules, submitted any first-day motions, or sought to assume any leases. Instead, they appear to be using the bankruptcy process as a temporary refuge, but with each passing day, it becomes increasingly clear that no financing is available. Meanwhile, Debtors' inaction is causing continued harm. The hotel properties are deteriorating rapidly. At the Herald, there are serious safety and maintenance issues. At the Tuscany, an unauthorized third party has apparently taken control of the premises and begun operating an illegal hotel. These conditions are a direct result of Debtors' failure to take any steps to preserve or protect the estate post-Petition Date. This state of affairs cannot continue. Immediate action is needed to bring this case to a close.

## II. There are No Unusual Circumstances Establishing that Conversion or Dismissal is not in the Best Interests of Creditors and the Estate

28. Under § 1112(b)(2) of the Bankruptcy Code, after the movant shows cause, the burden shifts to the debtor and other parties in interest to show that there are "unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and

12

the estate." 11 U.S.C. § 1112(b)(2).[38] Sufficient cause exists for conversion or dismissal, which shifts the burden to Debtors. There are no unusual circumstances in this case that would establish that conversion or dismissal is not in the best interests of the creditors and the estate. In fact, the opposite is true in this matter. There is no hope of rehabilitation, no hope of financing to restart operations, no value in any asset, and no hope of confirming a plan. For these reasons, the Court should convert the case to chapter 7 liquidation, or dismiss the case.

---

[38] Section 1112(b)(2) provides that:

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that –

    (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

    (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

        (i) for which there exists a reasonable justification for the act or omission; and

        (ii) that will be cured within a reasonable period of time fixed by the court.

13

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Aareal respectfully requests this Court dismiss or convert this case to a chapter 7 liquidation pursuant to 11 U.S.C. § 1112 or in the alternative, grant the Motion and appoint a chapter 11 trustee pursuant to 11 U.S.C. § 1104.

Dated: October 17, 2025
      New York, New York

                            **KELLEY DRYE & WARREN LLP**

                            By: /s/ Robert L. LeHane

                            Robert L. LeHane
                            David I. Zalman
                            Randall L. Morrison, Jr.
                            3 World Trade Center
                            175 Greenwich Street
                            New York, New York 10007
                            Tel: (212) 808-7800
                            Fax: (212) 808-7897
                            Email:   rlehane@kelleydrye.com
                                            dzalman@kelleydrye.com
                                            rmorrison@kelleydrye.com

                            *Counsel to Aareal Capital Corporation*